**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
VERONICA ROBLEDO, and KARIN WIDMANN,
Each Individually And On Behalf Of
All Other Persons Similarly Situated,

                    *Plaintiffs*,

      v.

No. 9 PARFUME LEASEHOLD,
LAURICE & CO. UPTOWN, INC.,
LAURICE WASHINGTON LTD.,
LAURICE & BLEECKER CORP.,
LAURICE SOUTHAMPTON, INC.,
LAURICE MADISON LTD., and
LAURICE RAHME, Individually,

                    *Defendants*.
-------------------------------------------------------------------------X

**12 CV 3579 (ALC)(DCF)**

related to

**12 CV 6111 (ALC)(DCF)**

**SEPTEMBER 5, 2013 MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE
(PRELIMINARY COLLECTIVE ACTION CERTIFICATION)**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................................1

II. PROCEDURAL HISTORY .........................................................................................................3

III. SUMMARY OF FACTS ..............................................................................................................3

IV. STATEMENT OF FACTS ...........................................................................................................4

    A. Original Lead Named Plaintiff Veronica Robledo
and Her Job as a Sales Associate for the Defendants. .....................................................4

    B. Individual Defendant Rahme, the Owner of All
of the Corporate Defendants, and the Nature
of the Defendants' Business Operations. .........................................................................6

    C. The Defendants' Retail Sales Associates Were,
and Are, Paid Pursuant to a Single, Centrally
Administered "Payroll System." ......................................................................................7

    D. Chronic Wage and Hour Violations by Defendants. .......................................................8

V. SUMMARY OF ARGUMENT ..................................................................................................10

VI. ARGUMENT ..............................................................................................................................11

    A. Plaintiff's Initial Burden at the First Step
of the Certification Process is Minimal. ........................................................................12

    B. Plaintiffs Have Met Their Burden at the First Step
of the Certification Process. ...........................................................................................15

VII. CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ali v. N.Y.C. Health & Hosps. Corp.*,
  11 CV 6393 (PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ......................................... 13

*Amador v. Morgan Stanley & Co.*,
  11 CV 4326 (RJS), 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ........................................... 11, 13

*Colon v. Major Perry St. Corp.*,
  12 CV 3788 (JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013) ............................................. 12

*Davis v. Lenox Hill Hosp.*,
  03 CV 3746 (DLC), 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) ......................................... 13

*Guillen v. Marshalls of Mass.*,
  750 F. Supp. 2d 469 (S.D.N.Y. 2010) ..................................................................................... 13

*Guttentag v. Ruby Tuesday*,
  12 CV 3041 (HB), 2013 WL 2602521 (S.D.N.Y. June 11, 2013) ............................................ 12

*Hallissey v. AOL*,
  99 CV 3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ............................................ 13

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. 2013) ..................................................................................... 13

*Herman v. RSR Sec. Servs.*,
  172 F.3d 132 (2d Cir. 1999) ..................................................................................................... 10

*Iglesias-Mendoza v. La Belle Farm*,
  239 F.R.D. 363 (S.D.N.Y. 2007) .............................................................................................. 14

*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007) ..................................................................................... 14

*Malloy v. Richard Fleischman & Assocs.*,
  09 CV 332 (CM), 2009 WL 1585979 (S.D.N.Y. June 3, 2009) ............................................... 13

*Mendoza v. Casa de Cambio Delgado*,
  07 CV 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ................................................ 12

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................................. 12, 14

*Poplawski v. Metroplex on the Atl.*,
  11 CV 3765 (JBW)(RER), 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ................................ 12

*Rodolico v. Unisys Corp.*,
    199 F.R.D. 468 (E.D.N.Y. 2001) ................................................................................... 13

*Winfield v. Citibank, N.A.*,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) ................................................................... 11, 14

*Young v. Cooper Cameron Corp.*,
    229 F.R.D. 50 (S.D.N.Y. 2005) ............................................................................ 13, 14

## Statutes

29 U.S.C. § 207(a)(1) ........................................................................................................ 11

29 U.S.C. § 216(b) ....................................................................................... 10, 11, 12, 15

29 U.S.C. § 255(a) ........................................................................................................... 10

29 U.S.C. §§ 201–19 ................................................................................................. passim

## Rules

Fed. R. Civ. P. 23 ...................................................................................................... 11, 12

I.     **PRELIMINARY STATEMENT**

Plaintiffs Veronica Robledo ("Robledo") and Karin Widmann ("Widmann") on behalf of themselves and all other persons similarly situated, by their attorneys, The Harman Firm, PC, respectfully submit this Memorandum of Law in Support of their Motion for Approval of Collective Action Notice.

As described in detail in this Memorandum, the corporate Defendants are closely related companies owned by one person, the individual Defendant Laurice Rahme ("Rahme"). Defendant Rahme and her companies are in the business of operating "high end" retail stores that sell expensive perfumes to consumers, under the "Bond No. 9" brand name. Plaintiffs are former employees of the Defendants. The Defendants' retail sales associates were chronically underpaid throughout their employment. They were not paid overtime premium wages for those hours worked in excess of forty (40) hours a weeks; they missed out on between two (2) to four (4) weeks of basic and overtime pay each calendar year as a result of the Defendants' bi-weekly payroll schedule (that is, there were only twenty-four (24) "paydays" each year, or two (2) per month); they were required to be at their stores both before and after official store hours, and were routinely denied breaks and meal periods during the work day, yet were typically paid based on an artificial and arbitrary "thirty-five" (35) hour work week (in fact, they were often working close to, or over, fifty (50) hours week); and, they were frequently pressured to work extra days during holiday seasons and were promised that they would be given paid days off in the future to "make up" for extra days worked. In fact, in general, no paid days off were provided to offset the extra days worked. Even if they had been, such a policy would be an illegal and blatant circumvention of the federal and state wage and hour laws, which in general prohibit the rolling or crediting of hours worked into future pay periods.

1

In this Motion, the Plaintiffs seek collective active certification because of the fact that there are literally dozens of current and former sales employees who were impacted by the illegal practices described above. Many of these people are unlikely to even be aware of these serious and chronic wage and hour violations, and almost all of them are unlikely to be aware of the pendency of this action, and of their rights to opt-in to it as plaintiffs. This is a serious problem because the short three- year statute of limitations under the Fair Labor Standards Act (the "FLSA") is running. Therefore, Plaintiffs seek judicial approval to notify as many of these individuals as quickly as possible of this lawsuit and of their rights to opt-in.

Collective action certification is proper because it is undisputed that Defendants' sales associates were similarly situated to one another, and were all compensated pursuant to one single, centrally administered "payroll system." For this reason, the Court should authorize the distribution of a clear and concise notice document to all former and current sales employees who worked for the Defendants within the statutory period, and afford them a chance to participate in this action. If these individuals (current and former retail sales employee without legal training or knowledge of wage and hour laws) are not promptly notified, it is likely that a substantial number of them, will simply never even learn that they may be entitled to compensation for many hours they actually worked but for which they were never paid. Collective actions are designed precisely to prevent this from happening.

## II.   PROCEDURAL HISTORY

On August 3, 2012, Plaintiff Robledo—at that time the only Plaintiff in this action—filed her initial Notice of Motion, Memorandum of Law in Support of Plaintiff's Motion for Approval of Collective Action Notice and Supporting Affidavits and Declarations (Docket Nos. 14–17).[1]

On March 21, 2013, the Court entered an Order (Docket No. 71) stating, *inter alia*:

> The Court now dismisses Plaintiffs' motion to certify class and approval of collection action without prejudice. Plaintiffs may re-file this motion after the operative complaint if filed. The Clerk is requested to close Docket Number 14.

On May 16, 2013, the Plaintiffs filed their May 16, 2013 Second Amended Class and Collective Action Complaint (Docket No. 80). On May 22, 2013, Defendants answered that Complaint (Docket No. 81).

Plaintiffs, consistent with the District Court's March 21, 2013 Order, now submit the Motion for Approval of Collective Action Notice and accompanying documents.

## III.   SUMMARY OF FACTS

The corporate Defendants are a group of companies all owned by individual Defendant Rahme. The Defendants are in the business of selling high end fragrances to customers.

During the relevant time period, Plaintiff Robledo worked as a retail sales associate at one of the Defendants' five (5) or six (6) retail stores in New York City, which is not disputed by Defendants. In fact, the Defendants have affirmatively represented that this was the case, and that **thirty-five (35) individuals**, including Plaintiff Robledo, were employed as retail sales associates at Defendants' Manhattan fragrance boutiques **during a single year**, *i.e.* March 15,

---

[1]   In the intervening period of time, Ms. Widmann became a named Plaintiff in this action. There are now three Plaintiffs in this action, as Maria Flores-Blanco joined the lawsuit on September 19, 2013 (Docket No. 20).

2011 to March 15, 2012. It is more than likely that additional persons were employed in that capacity prior to March 15, 2011 and after March 15, 2012. The Rahme-controlled fragrance boutiques still operate, and continue to employ many retail sales employees.

In the Plaintiffs' Complaint and in Plaintiff Robledo's two affidavits, Plaintiff Robledo contends that throughout the time she was employed as a retail sales associate, she often worked more than forty (40) hours in a workweek and was consistently not paid overtime wages for those hours in excess of forty (40). She also contends that during her employment, other retail sales associates were illegally compensated in the same manner.

The Defendants have themselves represented to the Court the all of their retail sales associates at all of the their stores in New York City were paid pursuant to a single, centrally administered "Bond No. 9 Payroll System" which was managed by a single "Director, Sales Administration," who has been employed in that capacity since 1995.

It is therefore apparent that there are, at a minimum, dozens of current and former retail sales associates of the Defendants who are similarly situated to Plaintiff Robledo as far as how they have been, and are currently being, paid by the Defendants.

## IV.     STATEMENT OF FACTS

**A.     Original Lead Named Plaintiff Veronica Robledo and Her Job as a Sales Associate for the Defendants.**

Plaintiff Robledo worked for the Defendants as a retail sales associate from June 2008 to February 2012. *See* Affidavit of Veronica Robledo In Support of Motion for Conditional Class Certification, sworn to on August 2, 2012 ("*2012 Robledo Aff.*"), ¶ 1. Plaintiff Robledo's work was performed in the normal course of the Defendants' day-to-day business operations. *Id.*, ¶ 5. The work performed by Plaintiff Robledo required no independent judgment. *Id.*, ¶ 2. She never

considered herself a manager or supervisor and never possessed managerial authority. *Id.*, ¶ 4. Plaintiff Robledo did not have the authority to hire, fire, or discipline other employees, and was not responsible for making hiring and firing recommendations. *Id.*, ¶ 3.

Plaintiff Robledo's job responsibilities as a retail sales associate consisted primarily of assisting shoppers and recording sales transactions. *Id.*, ¶ 2. Her work was performed under the supervision, direction and control of the individual Defendant Laurice Rahme ("Rahme"), who was, and remains the owner of all of the other Defendants, which operate retail store businesses. *Id.*

Plaintiff Robledo recently reviewed her 2012 Affidavit, reaffirmed it, and signed an additional and supplemental affidavit. *See* August 27, 2013 Supplemental Affidavit of Veronica Robledo in Additional Support of Motion for Conditional or Preliminary Collective Action Certification ("*2013 Robledo Aff.*"). In her 2013 Affidavit, Plaintiff Robledo avers to how individual Defendant Laurice Rahme personally interviewed all job candidates for retail store positions, and made all hiring, firing, and promotion related decisions. *2013 Robledo Aff.*, ¶¶ 6, 10. All retail store employees hired to work at the various Bond No. 9 fragrance boutiques had the same job functions, and all were under the supervision of Defendant Rahme. *Id.*, ¶¶ 7–8, 12–14. The job of a retail sales employee was to sell high end fragrances to customers and register sales. *Id.*, ¶ 12. Individual store managers did not run their stores according to their own preferences. *Id.* All retail sales associates were trained pursuant to a common plan or scheme that was centrally directed and controlled by individual Defendant Rahme from her headquarters in the basement of 9 Bond Street. *Id.*, ¶ 14.

**B.  Individual Defendant Rahme, the Owner of All of the Corporate Defendants, and the Nature of the Defendants' Business Operations.**

Individual Defendant Rahme is the owner of all six (6) of the corporate defendants. Defendants' May 22, 2013 Answer to Plaintiffs Second Amended Class and Collective Action Complaint, ¶ 10 (Docket No. 81) ("Defendants' Answer"). Defendant Rahme's lead company, "Bond No. 9 is a privately-owned company that sells high-end perfumes" and "its principal place of business is at 9 Bond Street, New York, New York." Defendants' Answer, ¶ 9. 9 Bond Street is in fact the store where Plaintiffs worked.

The nature of the Defendants' business, and Plaintiff Robledo's job as a retail sales associate, are not in dispute. Defendant Rahme's lead attorney in this action, Dennis A. Lalli, previously represented, in a letter to the New York State Division of Human Rights that:

> Bond [Defendant Bond 9] is engaged in the business of selling luxury fragrances at its retail stores in New York City and in Saks Fifth Avenue and Nordstrom stores throughout America. [Plaintiff Veronica Robledo] was a Salesperson at Bond's flagship store located at 9 Bond Street in Manhattan.

*See Ex. B* to the August 29, 2013 Declaration of Walker G. Harman, Jr. in Support of Plaintiffs' Motion for Conditional or Preliminary Collective Action Certification ("*Harman Decl.*").

Mr. Lalli, in his letter, also described individual Defendant Laurice Rahme as "the owner of Bond." He further stated that during the one year between March 15, 2011 and March 15, 2012, thirty-five (35) salespeople worked in "the Bond stores in Manhattan." *Harman Decl., Ex. B*.

The Bond No. 9 website identifies five (5) separate "Bond No. 9 New York Boutiques," four (4) of which are in Manhattan, and the fifth of which is in Sag Harbor, New York. *Harman Decl., Ex. C*. Another section of the Bond No. 9 website, introducing a new fragrance with a "launch date" of October 2011 states, *inter alia*, "[j]ust in time for the holidays, New York

6

Amber arrives on-counter November 1st and will be sold at Bond No. 9's six New York stores . . . ." *Harman Decl.*, *Ex. D.*

It is obvious, that taking into account employee turnover, dozens of persons have worked and continue to work as sales associates at Defendants' retail stores in New York City.

C. **The Defendants' Retail Sales Associates Were, and Are, Paid Pursuant to a Single, Centrally Administered "Payroll System."**

The Defendants have themselves represented to the Court that all sales associates at their retail stores or boutiques, such as Plaintiff Robledo, were treated similarly and subject to a common, centrally administered "Payroll System." On or about August 31, 2012, the Defendants submitted the Affidavit of Hormidas Caloobanan in support of a motion to dismiss an earlier version of Plaintiffs' complaint against the Defendants. In that Affidavit, Ms. Caloobanan identified herself as the "Director, Sales Administration" of "Laurice El Badry Rahme Ltd." She stated that among her duties "is to prepare and maintain payroll records for the six retail boutique stores operated" by:

> (a) No. 9 Parfume Leasehold, (b) Laurice & Co. Uptown, Inc., (c) Laurice Washington Ltd., (d) Laurice & Bleecker Corp. (e) Laurice Southampton, Inc." and (f) Laurice Madison Ltd., each of which operates a retail store that sells fragrances (collectively, Bond No. 9).

*August 31, 2012 Caloobanan Aff.*, ¶ 2.

Ms. Caloobanan further stated:

> I am also responsible for preparing and maintaining records of the hours worked by each employee at each of the Bond No. 9 store and for reporting payroll information to Paychex, Inc., the company that processes our payroll, on a semi-monthly basis in connection with our semi-monthly payroll periods.

*Id*.

7

In her affidavit, Ms. Caloobanan included a section called "The Bond No. 9 Payroll System – The First Step." In this section, she addressed assumptions about "each non-exempt employee" and in the same paragraph stated "[f]or example, in the case of the plaintiff [Veronica Robledo], she worked a 35-hour week." *Id.*, ¶ 4.

It is thus undisputed (in fact, it is the Defendants' own representation) that the Defendants have maintained and continue to maintain, a common, centralized payroll administration system run by one person with respect to all of its dozens of sales associates at all of its retail stores or boutiques in New York City.

D.     **Chronic Wage and Hour Violations by Defendants.**

Throughout her employment as a retail sales associate at one of the Defendants' stores, the flagship 9 Bond Street Store, Plaintiff Robledo often worked in excess of forty (40) hours a week, yet was not paid overtime compensation for those additional hours. *2012 Robledo Aff.*, ¶ 6. During Plaintiff Robledo's tenure with Defendants, she became aware of the obvious fact that Defendants employed many other sales associates at their various store locations throughout New York City. *Id.*, ¶ 7. Plaintiff Robledo also learned that the Defendants had a policy of simply refusing to even consider paying sales associates any overtime compensation for hours worked in excess of forty (40) hours a week. *Id.*

In the 2013 Robledo Affidavit, Plaintiff Robledo described how she personally had the opportunity to meet approximately fifty (50) of the Defendants' other retail store employees while employed as a retail sales employee. *2013 Robledo Aff.*, ¶ 9.

In the *2013 Robledo Aff.*, Plaintiff Robledo explains how throughout the 2008 to 2012 period, she, along with other retail sales employees, were paid twice a month, on the 15th day of each month, and the other on the last day of the month. *Id.*, ¶ 18. Thus, twenty-four (24) regular

paychecks would be issued to a retail sales employee for a full twelve-month (12-month) calendar year, resulting in Plaintiff Robledo and other retail sales employees losing between two (2) to four (4) weeks of pay each year. *Id.*, ¶ 19–21.

In the *2013 Robledo Aff.*, Plaintiff Robledo also explains how throughout her employment she consistently worked more than forty (40) hours a week. *Id.*, ¶ 22. This was because on weekdays, the store where she worked was open from 10:30 a.m. to 8:30 p.m., *i.e.*, ten (10) hours a day, and she had to be at the store a half an hour before opening time, and had to remain at the store between fifteen to twenty (15–20) minutes after closing time. *Id*. Plaintiff Robledo, along with other retail sales employees, was not allowed to take breaks, and often was not permitted to take a lunch period. *Id*. Therefore, even on those weeks when she only worked five (5) days a week, she was working in excess of forty (40) hours per week and closer to fifty (50) hours a week. *Id.*

In addition to the five-day (5-day) workweek, Plaintiff Robledo was often asked to work an additional or sixth day each week, particularly during the winter holiday season. *2013 Robledo Aff.*, ¶ 23. She did not receive any additional compensation for those extra days. *Id.* Defendant Rahme occasionally promised her that she would be given paid time of in the future to "make up" for extra days worked, but it never happened. *Id.* Similar promises were made by Ms. Rahme to other retail sales employees when they were asked to work extra days, however, no compensatory time-off was actually provided. *Id.*, ¶ 24.

In fact, Plaintiff Robledo, and other retail sales employees consistently did not receive any additional compensation, whether "overtime" or "straight" time for those hours they worked in excess of forty (40) hours within a week. *Id.*, ¶ 25. On Plaintiff Robledo's paystubs, no actual hours worked were shown, and it did not appear that any particular calculation of hours had even

been made. *Id.*, ¶ 26.  In fact, there was no time clock at the store where Plaintiff Robledo worked, and she and other sales employees simply had to "call in" and "call out" to a telephone number when they arrived at, and left work. *2013 Robledo Aff.*, ¶ 27.  Plaintiff Robledo know her experiences were typical of those of other retail sales employees because these employees often spoke with one another regarding these matters. *Id.*, ¶ 28.

Plaintiff Robledo, through her work, acquired an understanding that Defendant Rahme maintained complete control over the compensation and payroll system regarding all sales employees at the Defendants' retail stores. *Id.*, ¶ 15.  Plaintiff Robledo came to learn that Hormidas Caloobanan, the administrator of Defendants' payroll system, reported directly to Defendant Rahme, and had to do whatever Defendant Rahme ordered. *Id.*, ¶ 15.  Plaintiff Robledo had many discussions with other retail sales employees during her employment, and knew that many other retail sales employees had questions or concerns about how their hours were being calculated for payroll purposes. *Id.*, ¶¶ 28–29.  To her knowledge, no retail sales employees were ever offered any explanations by Defendant Rahme or Ms. Caloobanan regarding the calculation of their wages. *Id.*, ¶¶ 16, 29.

### V.     SUMMARY OF ARGUMENT

For the reasons set out in the Memorandum, Plaintiffs seek Court-authorization that notice be disseminated to all current and former retail sales associates of the Defendants who have been denied overtime so that may elect to join this case as opt-in Plaintiffs, pursuant to § 216(b) of the Fair Labor Standards Act (the "FLSA").  Otherwise, many of their claims will be barred or diminished by the FLSA statute of limitations—a short three (3) years.  29 U.S.C. § 255(a); *see also*, *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 141 (2d Cir. 1999) (the applicable

statute of limitations is either two (2) years or three (3) years where a defendants violations of the FLSA are willful).

## VI.   ARGUMENT

The FLSA requires employers to pay "any of [their] employees who in any workweek . . . work longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1).

Section 216(b) of the FLSA provides for a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the FLSA's overtime provisions, and has its own right of collective certification, separate and apart from FED. R. CIV. P. 23 regarding class action lawsuits:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of [themselves or themselves] and other employees similarly situated. No employee shall be a party plaintiff to any such action unless [they] give[] [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are 'similarly situated' and give consent to become a party in a writing filed with the court." *Amador v. Morgan Stanley & Co.*, 11 CV 4326 (RJS), 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (quoting 29 U.S.C. § 216(b)).

"The Second Circuit Court of Appeals has endorsed a two-step method of certification in an opt-in collective action under the FLSA." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 401–02 (S.D.N.Y. 2012).

11

A.      **Plaintiff's Initial Burden at the First Step of the Certification Process is Minimal.**

"The first step [of the two-step method of certification] involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations omitted). This determination requires only a "modest factual showing" from plaintiffs that "they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quotation marks and citations omitted).

"The standard at this point is 'considerably less stringent than the requirements for class certification under Rule 23.'" *Colon v. Major Perry St. Corp.*, 12 CV 3788 (JPO), 2013 WL 3328223, at *4 (S.D.N.Y. July 2, 2013) (quoting *Poplawski v. Metroplex on the Atl.*, 11 CV 3765 (JBW)(RER), 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012)).

"Although the 'modest factual showing' standard cannot be satisfied simply by 'unsupported assertions,' 'it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs *do in fact exist*.'" *Guttentag v. Ruby Tuesday*, 12 CV 3041 (HB), 2013 WL 2602521, at *1 (S.D.N.Y. June 11, 2013) (quoting *Myers* at 555 (2d Cir. 2010)) (quotation marks and citations omitted) (emphasis in original); *see also Mendoza v. Casa de Cambio Delgado*, 07 CV 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (in order to meet the "low bar for allegations required for collective action certification," the plaintiff's complaint or affidavits must allege a factual nexus with other employees of the defendant).

Accordingly, at the preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been

12

violated." *Guillen v. Marshalls of Mass.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) (citations omitted). As Judge Cote has observed, "[t]he test is whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." *Davis v. Lenox Hill Hosp.*, 03 CV 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (citation omitted).

"Because the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[] conditional certification.' " *Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs.*, 09 CV 332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)); *see also Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013) ("Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) ("Courts have recognized that it is best to authorize a collective action and then 'wait[ ] to see what the facts bear out.' " (citation omitted) (alteration in original)).

Indeed, at the notice stage, "courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001) (quotation marks and citations omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. AOL*, 99 CV 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). "In making its determination at this first state, the Court may consider a plaintiff's affidavit and hearsay statements." *Ali v. N.Y.C. Health & Hosps. Corp.*, 11 CV 6393 (PAC), 2013 WL 1245543, at *2 (S.D.N.Y. Mar. 27, 2013). Defendants, however, may not defeat a court's determination that

13

Plaintiffs are similarly situated by submitting their own affidavits. *Francis v. A&E Stores*, 06 CV 1638 (CS)(GAY), 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) ("[W]hile Defendant has supplied what it calls 'undisputed store manager affidavits,' . . . on which it also relies for the proposition that ASM duties are variable, those affidavits should be discounted at this stage.").

"At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) (citation omitted). Nor does a court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Id.* (citing *Young* at 54). This initial step, in other words, is not the place to scrutinize possible factual variations between plaintiffs. *Accord Lynch* at 368 ("Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification."); *see also Iglesias-Mendoza v. La Belle Farm*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("[T]he factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.").

"If the plaintiffs demonstrate that 'similarly situated' employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process." *Winfield* at 402 (citation omitted). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not . . . ." *Myers* at 555.

**B.**     **<u>Plaintiffs Have Met Their Burden at the First Step of the Certification Process.</u>**

The Plaintiffs' Motion for Conditional Certification should be granted because it is undisputed that Plaintiff Robledo was one of dozens of retail sales employees employed by the Defendants at their fragrance boutiques in New York City and Sag Harbor, Long Island.  In fact, the Defendant have themselves represented that all of their retail sales employees at all of their retail stores were paid pursuant to a single, centrally administered "Payroll System" managed by one "Director" who has been employed in that capacity since 1995.

As Plaintiff Robledo has adequately pled violations of the FLSA and the New York Labor Law, the Court should authorize that notice of this Collective Action be sent out to all similarly situated current and former retail sales employees of the Defendants.  These individuals should be given a reasonable opportunity to "opt-in" to this action if they wish to.

## VII.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that this Court:

(i)     Directs Defendants to disclose the names and last known address of all current and former employees who worked as retail sales associates within the statutory period;

(ii)    Authorizes that notice be sent, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees that they may opt into this action should they wish to assert claims under the FLSA, 29 U.S.C. §§ 201–19; and,

(iii)   Order such further relief as this Court may deem just and proper.

Dated: New York, New York
       September 5, 2013

Respectfully submitted by:
THE HARMAN FIRM, PC
*Counsel for Plaintiffs*

        s/
Walker G. Harman, Jr. [WH-8044]
Peter J. Andrews [PA-3295]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
pandrews@theharmanfirm.com

To:    Dennis A. Lalli [DL-0575]
Barbara V. Cusumano [BC-7561]
BOND, SCHOENECK & KING, PLLC
*Counsel for Defendants*
330 Madison Avenue, 39th Floor
New York, New York 10017
(646) 253-2300
dlalli@bsk.com
bcusumano@bsk.com