# THE HARMAN FIRM, PC
ATTORNEYS & COUNSELORS AT LAW

200 WEST 57th STREET, SUITE 900, NEW YORK, NEW YORK 10019

TELEPHONE 212 425 2600   FAX 212 202 3926

WWW.THEHARMANFIRM.COM

September 26, 2013

**VIA ECF**
Hon. Debra Freeman
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Robledo v. No. 9 Parfume Leasehold*, 12 CV 3579 (ALC)(DCF)
            related to
          *Robledo v. Bond No. 9*, 12 CV 6111 (ALC)(DCF)

Dear Judge Freeman:

      We represent the Plaintiffs in both above-referenced actions and write to the Court in connection with the wage-and-hour case, *Robledo, et al. v. No. 9 Parfume Leasehold, et al.*, 12 CV 3579 (ALC)(DCF). Lead Plaintiff Veronica Robledo is a former retail sales employee of the Defendants.

      Although Plaintiffs filed their Complaint in this action on May 4, 2012, until this week, no depositions had been taken. Ms. Robledo's deposition was scheduled and confirmed for yesterday morning, Wednesday, September 25, 2013. This was to be the first deposition in the case; several others have been scheduled for October. The September 25 date for Ms. Robledo was agreed upon by counsel during discussions in August and September of this year. It also was a date to which Ms. Robledo was asked to commit.

      During the past few weeks, this office has worked closely with Ms. Robledo to prepare for this deposition. As of Tuesday afternoon, September 24, Ms. Robledo was looking forward to finally having an opportunity to testify on the record regarding her wage-and-hour claims against Defendants.

      Ms. Robledo, who is a single mother with two (2) minor children, resides in Staten Island and relies on public transportation. She made special after-school care arrangements so that she could be available all day Wednesday.

      On the eve of deposition, Tuesday, September 24, at 4:24 p.m., our office received an email from counsel for Defendants, Dennis A. Lalli, Esq. of the law firm Bond, Schoeneck & King, PLLC. Mr. Lalli's email stated that in the course of preparing to take Ms. Robledo's deposition the following day, he "just noted that there [are] many documents that I intend to use at that deposition . . . ." but which had not been produced to Plaintiffs—ever. The production in question "includes plaintiff's time sheets, invoices, payroll and other compensation records."

Hon. Debra Freeman, U.S.M.J.
September 26, 2013
Page 2 of 6

Eighteen (18) minutes after we received the email, we requested that the additional production be sent by messenger to our office, but the request was ignored.

Defendants' email further purported that the "time sheets, invoices, payroll and other compensation records" were purportedly "not sought by the plaintiffs," but that if they had been, they would have been provided to the Plaintiffs at some earlier point.

Given the age of this case, and the many delays in getting depositions underway, as well as Ms. Robledo's commitment to hours of travel to be deposed at Mr. Lalli's office all day, Plaintiffs, eighteen (18) minutes later, declined Mr. Lalli's invitation to postpone Ms. Robledo's deposition.

Plaintiffs respectfully seek the Court's guidance regarding the content of the email. In the first instance, this case is, and has always been, a wage-and-hour case involving claims by Ms. Robledo and other employees against the various Defendants, including individual Defendant Laurice Rahme, who is the owner and manager of all other Defendants. The core allegations in the lawsuit are that Defendants' employees were not paid properly for the hours that they worked, including basic wages and overtime. This is a standard Fair Labor Standards Act case.

Moreover, Mr. Lalli is intimately familiar with Plaintiffs' wage-and-hour claims, as he has been Ms. Rahme's long-time employment counsel for at least several years, and has had extensive interactions with our office since the inception of this action.[1] His firm's website goes further and states that Mr. Lalli's "practice focuses on advising and representing employers in . . . wage and hour matters," and that he "has practiced labor and employment law since 1977 . . . ."

Mr. Lalli's total and early immersion in this case is perhaps best illustrated by his attempt to introduce the Affidavit of Hormidas Caloobanan, dated August 31, 2012. *See* Docket Entry 20. Ms. Caloobanan is Defendants' payroll administrator or operations director, whom we have not yet had the opportunity to depose. The Caloobanan Affidavit, presumably drafted by Mr. Lalli, and which he definitely filed with the Court, contains numerous uncorroborated statements regarding the Defendants' "payroll system," and makes specific references to Ms. Robledo's compensation during her employment.[2]

When Peter J. Andrews of this office arrived at Defendants' counsel's office yesterday, Ms. Caloobanan was already present in the conference room. Mr. Lalli proceeded to physically hand Mr. Andrews a heavily packed Redweld filing folder at approximately 9:57 a.m., and told him that it contained copies of some of the "many documents" referred to in the email.

---

1. In fact, Ms. Robledo and her former colleague and co-Plaintiff, Karin M. Widmann met Mr. Lalli on several occasions during their employment when Mr. Lalli came to Defendants' flagship Bond Street store to visit Ms. Rahme and discuss her various labor and employment law issues.

2. We note that Mr. Lalli has represented to the Court that Ms. Caloobanan is not a native English speaker and that she sometimes has difficulty expressing herself. Her Affidavit, however does not suggest that it was prepared by someone who has difficulty communicating in English.

Hon. Debra Freeman, U.S.M.J.
September 26, 2013
Page 3 of 6

Ms. Robledo's deposition then began. A little over an hour into the deposition, Mr. Lalli marked as an exhibit a document which was not familiar to Mr. Andrews, and which was not Bates-numbered. Mr. Andrews immediately asked Mr. Lalli if it was a document previously produced by Defendants (or even perhaps by the Plaintiffs to the Defendants). Mr. Lalli advised him that in fact it was not, and that it was not even one of the documents in the thick Redweld. Mr. Lalli stated that the documents in the folder were not Bates-numbered in any way, and that there were additional documents that he would be producing in the future, after Ms. Robledo's deposition (presumably including the document about which he was about to ask Ms. Robledo).

Mr. Andrews advised Mr. Lalli that Plaintiffs objected to the use of any of these documents in Ms. Robledo's deposition and further advised that Ms. Robledo would not be answering any questions regarding such documents.

Mr. Lalli responded by stating that he did not think he could continue to take Ms. Robledo's deposition because a large percentage of the questions he planned to asked her involved these various documents (including some that our office still had not received, and which Mr. Lalli intended to provide only after he concluded Ms. Robledo's deposition). He reiterated that it was his position that while these documents had been available for some time, they had not been produced because Plaintiffs had never asked for them.

Mr. Lalli then stated that he would try to get the Court on the phone to address this impasse, which had been created by: (i) Defendants' last-minute "production" of documents (*i.e.*, the Redweld on the conference room table); and (ii) Mr. Lalli's representation that there were additional documents that he would use in the deposition that were not even in that folder.

Upon Mr. Lalli contacting the Court, Your Honor was able to address the assembled group via speakerphone. Mr. Andrews explained Plaintiffs' position that these documents should have been produced long ago, and that they were responsive to our earlier requests for production. This dispute arose at such short notice (*i.e.*, between 4:30 p.m., Tuesday and 11:30 a.m., Wednesday), that Mr. Andrews did not even have these earlier document requests with him at the deposition and could not respond to the Court's specific inquiries. Interestingly, Mr. Lalli did not have the Plaintiffs' document requests handy either, despite his extreme confidence that none of the documents that he was in the process of "producing" were responsive to Plaintiffs requests. It should be emphasized that during the call, Mr. Lalli was sitting in a conference room in his law firm's Midtown offices when he advised the Court that no one in the room could specifically describe what had been previously requested.

It is our understanding that Your Honor advised the parties that, under the circumstances (an unscheduled call to the Court during a deposition without any written discovery requests on hand) it was impossible to rule on whether these "many documents" should have been previously produced. We also understand that the Court advised that if it turns out that Defendants should have produced these document previously, Ms. Robledo's deposition would resume on another day, but only at Defendants' cost (*i.e.*, the cost of the court reporter and related services). We understand that Your Honor further advised that if in fact Mr. Lalli had not been obligated to produce these documents in advance of Ms. Robledo's deposition in her wage-and-hour case, the deposition would resume on another day, albeit at Plaintiffs' expense.

Hon. Debra Freeman, U.S.M.J.
September 26, 2013
Page 4 of 6

After Your Honor was off the line, Mr. Lalli, in a remark off the record, asked Mr. Andrews to advise him why Plaintiffs believe these documents should have been produced previously. Mr. Lalli said that our office should do so because maybe Plaintiffs could persuade him that they were in fact right, that Defendants were wrong, and that further judicial intervention would not be required to resolve this matter.[3]

Ms. Robledo's deposition was abruptly closed for the day at around noon, and she went home. Thus, Ms. Robledo ended up spending almost twice as much time in transit as she had at Defendants' counsel's office.

Mr. Andrews returned to our offices with the Redweld of non-Bates-numbered documents. Based on an initial cursory review of them, they appear to include Ms. Robledo's sign-in sheets, paychecks, payroll information, and work schedules. Based on Mr. Lalli's representations, we expect an additional copy of this production, with Bates-numbering, in addition to further documents including those for which he intended to seek our client's testimony yesterday.

In response to the Court's inquiry into why Defendants' documents are responsive to Plaintiff's discovery demands, we submit the following:

(i) Plaintiffs' Document Request No. 6 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, CONCERNING payroll records and records of hours worked for all employees of Defendants since June 2007."

(ii) Plaintiffs' Document Request No. 8 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, CONCERNING the hours worked each workday and the total hours worked each week by each person employed by Defendants since June 2007."

(iii) Plaintiffs' Document Request No. 9 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, CONCERNING the regular rates of pay and any premium for overtime hours, including date of payment and the pay periods covered, which was paid TO each employee employed by Defendants since June 2007."

(iv) Plaintiffs' Document Request No. 10 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED

---

3. During a break in the deposition, Mr. Lalli, looking at a photograph on the wall of the conference room, turned directly to Ms. Robledo and remarked that he would have preferred it if his firm would taken mug shots of every Plaintiff who had been deposed in that conference room and who later lost his or her case, and arrayed them on the wall for future plaintiffs to see when visiting the firm. Ms. Robledo was dumbfounded and did not respond.

          INFORMATION, supporting the basis for any exemption claimed for each employee of Defendants for whom Defendants claims to be exempt from the minimum wage, overtime, and recordkeeping requirements of the New York Labor Law and/or the Fair Labor Standards Act."

(v)    Plaintiffs' Document Request No. 11 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, CONCERNING the total additions and deductions from wages paid to each employee each pay period and the nature of those deductions for each employee employed by Defendants since June 2007."

(vi)    Plaintiffs' Document Request No. 12 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, which relate in anyway to the terms and conditions of Plaintiffs' employment with Defendants."

(vii)    Plaintiffs' Document Request No. 18 seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION, CONCERNING upon which Defendants will rely to defend against liability in this matter."

      Defendants' latest production is also very likely responsive to Plaintiffs' Document Request No. 1, which seeks "The complete personnel files of Plaintiffs," as well as Plaintiffs' Document Request No. 2, which seeks "All COMMUNICATIONS, and all DOCUMENTS, and all ELECTRONICALLY MEMORIALIZED INFORMATION relating, reflecting or referring to any and/or all witnesses identified in Defendants' responses to Plaintiffs' First Set of Interrogatories."

      Defendants' responses to Plaintiffs' discovery requests are signed by Mr. Lalli. Further, on Wednesday morning, with Ms. Caloobanan sitting across the table, Mr. Lalli handed Mr. Andrews a signed and notarized verification of Defendants' discovery responses with Ms. Caloobanan's signature on it, notarized yesterday by Mr. Lalli.

      Therefore, most—and likely all—of Defendants' latest production was completely responsive to Plaintiffs' discovery requests. Worse, this is not the first time Plaintiffs sought these documents. Mr. Lalli's signed responses to Plaintiffs' 2012 document requests, which were substantially similar to those quoted above, also denied such production to us.

      Plaintiffs, and in particular Ms. Robledo, have been waiting for this case to move forward since early 2012. Our office has invested much time and effort in developing this case, and responding to aggressive efforts to knock us out before a single deposition. Mr. Lalli has advised us that he will not produce Ms. Caloobanan or Ms. Rahme for depositions until after he has completed the depositions of Ms. Robledo and Ms. Widmann. This is unduly unfair to Plaintiffs who have waited to depose them since last year, especially since we are not responsible for Defendants' failure to produce what were obviously responsive in advance of yesterday's deposition.

Hon. Debra Freeman, U.S.M.J.
September 26, 2013
Page 6 of 6

      Plaintiffs respectfully submit that these tactics have been undertaken in bad faith, and violate both the letter and the spirit of the Federal Rules of Civil Procedure, and the Local Rules of the Southern District of New York.

      We thank the Court for its time and attention to these matters.

                                    Respectfully submitted,

                                           s/
                                  Walker G. Harman, Jr. [WH-8044]


cc:    Dennis A. Lalli, Esq. (via ECF)
        Hon. Debra Freeman (via U.S. mail)