UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                         :

VERONICA ROBLEDO, individually and on
 behalf of all others similarly situated,

                        Plaintiffs,

          - against -

NO. 9 PARFUME LEASEHOLD and
LAURICE RAHME, individually,

                       Defendants.

-------------------------------------------------------------X

No. 12 Civ. 3579 (ALC)(DF)

ORAL ARGUMENT
  REQUESTED  

 

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE

Of Counsel:  Dennis A. Lalli
               Barbara V. Cusumano

Bond Schoeneck & King, PLLC
330 Madison Avenue, 39th Floor
New York, New York 10017
(646) 253-2300

<u>TABLE OF CONTENTS</u>

<u>Table of Authorities</u>………………………………………………………………………iii

<u>PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT</u>………………………..1

<u>FACTUAL BACKGROUND</u>…………………………………………………………..…4

<u>ARGUMENT</u>………………………………………………………………………8

POINT I

       CERTIFICATION OF A CLASS FOR THE
       SEMI-MONTHLY PAY PERIOD CLAIM SHOULD BE
       <u>DENIED BECAUSE THAT CLAIM IS NOT PLED IN THE COMPLAINT</u>………8

POINT II

       PLAINTIFFS HAVE FAILED TO MAKE THE NECESSARY
       SHOWING THAT THEY WERE THE VICTIMS
       OF A COMMON PRACTICE OR POLICY THAT VIOLATED
       <u>THE LAW AND THAT SIMILARLY SITUATED PERSONS EXIST</u>…………….10

       A.  Although Only a "Modest Showing" Is Required for
          Certification of a Collective Action, Substantial Allegations
          Are Required, and Conclusory Allegations and Speculation
          <u>Based on a Plaintiff's Personal Experiences Are Insufficient</u>………….10

       B.  <u>The Robledo Affidavit Fails to Make the Necessary Showing</u>………….12

          1. There is no showing that the semi-monthly
            <u>pay system violates the law</u>………………………………….…………12

          2. Ms. Robledo's allegations of unpaid overtime are not
            tied by any factual nexus tony common practice
            or policy of the defendants, and her allegations that
            others are similarly situated in respect of unpaid
            <u>overtime are conclusory and without substance</u>………………………15

POINT III

       IF THE MOTION WERE TO BE GRANTED, PLAINTIFFS SHOULD
       BE PERMITTED CONTACT INFORMATION FOR SALES ASSOCIATES
       <u>EMPLOYED WITHIN THE LAST TWO YEARS, NOT THREE</u>…………………21

POINT IV

**DEFENDANTS SHOULD BE PROVIDED WITH
AN OPPORTUNITY TO DEVELOP A MUTUALLY
AGREED UPON NOTICE OF COLLECTIVE ACTION**………………………………..22

**CONCLUSION**……………………………………………………………………………23

## <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*Ali v. New York City Health & Hosp. Corp.*,
  No. 11 Civ. 6393, 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013)..............11, 16, 17, 19

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  No. 05 Civ. 6319, 2005 WL 3098730 (S.D.N.Y. Nov.18, 2005).........................17, 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................8

*Boutros v. JTC Painting and Decorating Corp.*,
  No. 12 Civ 7576, 2013 WL 3110943 (S.D.N.Y. June 19, 2013) .........................9, 18

*Castillo v. P&R Enterprises, Inc.*, 517 F.Supp.2d 440 (2007) ..........................................8

*Eng-Hatcher v. Sprint Nextel Corp.*,
  No. 07 Civ 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) .........................17, 19

*Guan Ming Lin v. Benihana Nat'l Corp.*,
  275 F.R.D. 165 (S.D.N.Y. 2011)...............................................................................8

*Guillen v. Marshalls of MA, Inc.*,
  750 F.Supp.2d 469 (S.D.N.Y. 2010)....................................................................11, 14

*Guillen v. Marshalls of MA, Inc*,
  841 F.Supp.2d 797 (S.D.N.Y. 2012)......................................................................290

*Gunawan v. Sake Sushi Rest.*,
  No. 09-CV-5018, 2012 WL 4369754 (E.D.N.Y. Sept. 24, 2012)...............................21

*Hoffman-LaRoche, Inc., v. Sperling*,
  493 U.S. 165 (1989) ................................................................................................10

*Horne v. United Servs. Auto. Ass'n*,
  279 F. Supp.2d 1231 (M.D. Ala. 2003) ...................................................................10

*Levinson v. Primedia Inc.*,
  No. 02 Civ 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003).............12, 15, 17, 19

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
  711 F.3d 106 (2d Cir. 2013) ....................................................................................18

*Lynch v. United Servs. Auto Ass'n*,
  491 F.Supp.2d 357 (S.D.N.Y. 2007).....................................................................14-15

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1998) ............................................................................... 21

*Mike v. Safeco Ins. Co. of Am.,*
  274 F.Supp.2d 216 (D. Conn. 2003) ...................................................... 11

*Myers v. Hertz Corp.,*
  624 F.3d 537 (2d Cir. 2010), *cert. denied.* 132 S.Ct. 368 (2011) ............... 9, 10, 11

*Nakahata v. New York-Presbyterian Healthcare System, Inc.,*
  No. 10 Civ. 2661, 2011 WL 321186 (S.D. N.Y. Jan. 28, 2011) ...................... 9

*Ramirez v. H.J.S. Car Wash Inc.,*
  No. CV-112-2664. 2013 WL 1437600 (E.D.N.Y. Apr. 9, 2013) ...................... 21

*Romero v. H.B. Automotive Group, Inc.,*
  No. 11 Civ. 386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ........................ 15

*Rudd v. T.L. Cannon Corp.,*
  2011 WL 831446, *6 (N.D.N.Y. Jan. 4, 2011) ........................................... 20

*Salomon v. Adderlay Indust., Inc.,*
  847 F.Supp.2d 561 (S.D.N.Y. 2012) ........................................................ 11

*Stubbs v. McDonald's Corp.,*
  227 F.R.D. 661 (D.Kan. 2004) ................................................................. 5

*Vasquez v. Vitamin Shoppe Industries,*
  No. 10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ...................... 11

*Young v. Cooper Cameron Corp.,*
  586 F.3d 201 (2d Cir. 2009) .................................................................... 21

## STATUTES

29 U.S.C. § 216(b) .................................................................................. 10

29 U.S.C. § 255(a) .................................................................................. 21

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") ............... passim

New York Labor Law ["NYLL"] § 191(1)(d) ............................................. 3, 8, 12

## OTHER AUTHORITIES

Fed.R.Civ.P. 8(a)(2) ................................................................................ 8

U.S. DOL Admin. Opinion, 1983 DOLWH LEXIS 30 (Jan. 14, 1983) ............... 4, 12, 13

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Defendants, by their attorneys, Bond, Schoeneck & King, PLLC, submit this memorandum of law in opposition to plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for an order directing defendants to disclose the names and addresses of all current and former non-exempt[1] employees who worked as retail sales employees at defendants' retail stores in New York State during the last three years.

As a threshold matter, plaintiffs' request for certification of a collective action based on the claim that defendants' semi-monthly pay system – in which defendants' Sales Associates are paid twice a month, or 24 times a year – results in pay for only 48 weeks a year instead of 52 (*see* Supplemental Affidavit of Veronica Robledo, sworn to August 28, 2013 [the "Robledo Aff't" or "Robledo Affidavit"] ¶¶ 18-21) must be denied because that claim is not pled in the Complaint.  Indeed, plaintiff Robledo made two motions to amend the original complaint to allege this claim (*see* Dkt. 11, 12 & ex. B at ¶¶ 44-48, 34, and 35 at 5-7), but voluntarily withdrew them.  (*See* Dkt. 52.)  More significant, she did not include a semi-monthly pay system claim in the Complaint she filed in response to this Court's Order to "serve and file a motion" by November 2, 2012, "seeking leave to plead all claims that she wishes to plead, on her own behalf and/or on

---

[1]    Plaintiffs' Notice of Motion seeks information about and notice to "*all* current and former employees who worked as retail sales employees at Defendants' retail stores in New York State . . .." (Emphasis added.)  However, the May 13, 2013 Second Amended Class and Collective Action Complaint (herein the "Complaint" or "Complt.") defines "Collective Action Members" as "all persons who are or were formerly employed by [defendants] . . ., who were *non-exempt* employees within the meaning of the FLSA and who were not paid overtime compensation . . .." Complt. ¶ 19 (emphasis added).  And plaintiffs' supporting memorandum of law seeks disclosure of information concerning "employees who worked as retail sales associates within the statutory period." (*See* Dkt. 85 at 15.)  Plaintiffs' motion should be construed as seeking information concerning *non-exempt* retail Sales Associates, not "all retail sales employees."  Plaintiffs should not be permitted to seek conditional certification of a class broader than the class alleged in the Complaint.

behalf of the putative plaintiff class.  This deadline shall be considered final and will not be extended, absent extraordinary cause." (Dkt. 52.)  Ms. Robledo should not be permitted to flout the Court's order by asserting a claim in her affidavit that she did not assert in her Second Amended Class and Collective Action Complaint.

The motion for conditional certification also should be denied because plaintiffs purport to show that there is a class of persons who are "similarly situated" to themselves solely on the strength of a single affidavit that relies exclusively on speculation and conclusory allegations, allegations that are very much similar to, and in many ways identical with, allegations that the courts regularly hold are insufficient to meet even the "lenient" standard that governs the certification of a collective action.

For example, the Robledo Affidavit describes a uniformly-applied semi-monthly pay system, but her assertion that employees other than she herself were not paid overtime compensation when they worked more than 40 hours in a week is not tied to that system by any factual nexus whatsoever.  Instead, her contention rests solely on the statement that "In [*sic* - I] know that my experiences related above were typical of those of other retail sales employees because we often spoke about these matters with one another."  Robledo aff't ¶ 28.  Nothing else.  Not a single fact concerning other employees based on personal knowledge, not even a particularized, identifiable hearsay statement.  There is no indication as to whom she spoke with, what their position was, whether they worked overtime, or anything else that would suggest that whatever grievance they had was somehow linked to defendant's semi-montly pay system.  Ms. Robledo makes no proffer of any factual nexus at all between the alleged experiences of others and defendants' payroll practices or polices.

63867.2

Ms. Robledo, moreover, fails to identify even a single work week in which she worked more than 40 hours without being paid overtime for it, and she fails to identify even one other employee who worked more than 40 hours in a week but was not paid at overtime rates for those hours.  Indeed, she admits she *was* paid overtime, at least "on one discrete occasion," *id.* ¶ 25, but does not provide the slightest hint as to why, if defendants had a uniform policy of not paying anyone at overtime rates when they worked overtime hours, she thinks she was paid overtime that for week but not others.  In contrast, defendants show – by providing copies of paystubs – that Sales Associates from each defendant retail store were paid at overtime rates when they worked in excess of 40 hours in a week.  *See* Declaration of Hormidas Caloobanan (herein "Caloobanan Dec." or "Caloobanan Declaration"), signed October 15, 2013, ¶¶ 29 – 40 & ex. I – Q.

Similarly, Ms. Robledo alleges (correctly) that the employees of defendants' stores were paid on a semi-monthly basis, 24 times a year. *Id.* ¶ 18.  However, even if her claim based on this system were properly before the Court even though it is not pled, she provides nothing but gross speculation to suggest that such a system is unlawful, and certainly no documentation to support her assertion that "[t]he paychecks that the retail sales employees [received] amounted to pay for forty-eight weeks a year rather than fifty-two weeks a year" is whatsoever.  *Id.* ¶ 19.  This is demonstrated by her allegation that "I now realize and appreciate that the payroll system described above resulted in me and other retail sales employees losing between two to four weeks of pay each year, because each year is composed of approximately fifty-two full weeks."  *Id.* ¶ 20.  However, the 24 semi-monthly pay periods include each of the 52 work weeks that fall within those periods, and each Sales Associate is paid for all 52 weeks of the Year.  *See* Caloobanan Dec. ¶ 20.

3

63867.2

A "showing" – however modest – is required.  Neither gossip, nor naked assertions, speculation, or conclusory allegations, are enough, particularly since semi-monthly pay systems are expressly permitted by state and federal law.  *See* New York Labor Law ["NYLL"] § 191(1)(d); *see also,* U.S. DOL Admin. Opinion, 1983 DOLWH LEXIS 30 (Jan. 14, 1983) at 2 (copy attached).  "Realiz[ing] and appreciat[ing]" something does not make it so and does not satisfy the "showing" necessary to sustain certification of a collective action, not even at the initial, "conditional" stage of certification.

Plaintiffs thus fail even to meet the "lenient" standard for certification of a collective action.  Their motion should be denied.

## FACTUAL BACKGROUND

The defendants consist of six corporate entities: (a) No. 9 Parfume Leasehold, (b) Laurice & Co. Uptown, Inc., (c) Laurice Washington Ltd., (d) Laurice & Bleecker Corp., (e) Laurice Southampton, Inc., and (f) Laurice Madison Ltd. (collectively, "Bond"), each of which operates a retail boutique that sells high-end fragrances, and Laurice Rahme, an individual, in her capacity as owner of these entities.  (Complt. ¶¶ 9, 10, 12 ).  Plaintiff was a Sales Associate who worked at one or more of the retail stores that the defendants operate.  (Complt. ¶ 35.[2])

Hormidas Caloobanan, the Director of Sales Administration for Laurice El Badry Rahme Ltd., is responsible for preparing and maintaining records of the hours worked by each employee at each of the Bond stores and for reporting payroll information to Paychex, Inc., the company that processes Bond's payroll, in connection with Bond's

---

[2]   Actually, Complaint ¶ 35 alleges that Ms. Robledo was employed by "Defendant Bond No. 9."  There is no defendant named "Bond No. 9" identified in the Complaint, and the Complaint does not define the term "Bond No. 9."  Defendants assume that by "Bond No. 9," plaintiffs refer to the corporate defendants.

63867.2

semi-monthly payrolls.  Caloobanan Dec., signed October 16, 2013 ¶¶ 1, 2.  It is the policy of the defendant stores to pay Sales Associates on an hourly basis and to pay them one and a half times their regular straight time hourly rate of pay for hours worked in excess of 40 in any single Monday-to-Sunday work week.  *Id.* ¶¶ 5, 39.

Bond's semi-monthly payroll system for non-exempt employees is based on two principal steps, the first of which assumes that each Sales Associate works a particular number of hours each week, and then calculates the amount she would earn if she worked all the hours she is regularly scheduled to work in each week and no more.  (Caloobanan Dec. ¶ 7.)  Bond refers to this amount as her weekly "salary."  Ms. Robledo's scheduled work week, for example, was 35 hours.  (*Id.*)

The Sales Associate's scheduled weekly hours then are multiplied by her regular straight-time hourly wage rate to calculate the weekly salary she would earn if she worked her regularly scheduled work week.  (*Id.* ¶ 8.)  For example, Ms. Robledo's straight-time hourly wage rate was $26, so her presumptive weekly salary was $26 x 35 = $910.  (*Id.*)  The Sales Associate's presumptive semi-monthly rate of pay is then derived, first by multiplying her weekly salary by 52 to get her presumptive annual salary.  (*Id.* ¶ 9.)  Once the presumptive annual salary is calculated, Ms. Caloobanan notifies Paychex of that salary, and Paychex then divides that amount by 24 to derive the Sales Associate's presumptive semi-monthly salary.  (*Id.*)

For Ms. Robledo, for example, 52 times her weekly salary of $910 yielded an annual salary of $910 x 52 = $47,320.  (*Id.* ¶ 10.)  Since $47,320 ÷ 24 = $1,971.67, her semi-monthly salary of $1,971.67 is the amount she received each semi-monthly pay period when she worked no overtime and was not docked for absences.  (*Id.* ¶ 11.)  Thus,

63867.2

if she (or any other Sales Associate) worked 52 weeks, working a regular schedule of 35 hours per week and getting paid $26 per hour for each of those hours, she would earn and be paid $47,320. ($26 x 35 hours per week x 52 weeks = $47,320 for the year.) (*Id.* ¶ 12.) In such an example, payment on a semi-monthly pay schedule would mean that the Sales Associate received 24 checks in the gross amount of $1,971.67 each, and that she would have been paid for 52 weeks, not 48. (*Id.*)

After the Sales Associate's presumptive semi-monthly salary is derived, that salary is adjusted up in any semi-monthly pay period in which the Sales Associate either (a) works straight-time hours in excess of 35 but fewer than 40 in any of the 7-day work weeks (Monday to Sunday) that end during the semi-monthly pay period at issue, and/or (b) works overtime hours (that is, hours in excess of 40) in such a work week.[3] (*Id.* ¶ 13.) The upward adjustments ordinarily are paid with a separate check. (*Id.* ¶ 15.)

There are 20 semi-monthly pay periods each year in which two work weeks end, for a total of 40 weeks. There are 4 semi-monthly pay periods each year in which three work weeks end, for a total of 12 weeks. Since Ms. Caloboonan's reports to Paychex cover all 24 semi-monthly periods, they cover the 52 work weeks that end during those semi-monthly reporting periods (40 + 12 = 52), and each employee is paid for all time worked during each of the 52 work weeks that are covered by those 24 semi-monthly pay periods. (*Id.* ¶ 20.)

The adjustments made in the second step of the Bond payroll system include, in addition to upward adjustments for hours worked in excess of the Sales Associate's

---

[3]  It should be noted that this assumes that the Sales Associate's regularly scheduled work week was 35 hours. Some Sales Associates have a regularly scheduled work week of 37.5 hours, some have a regularly scheduled work week of 40 hours, and some have regularly scheduled work weeks of fewer than 35 hours. (Caloobanan Dec. ¶ 13.)

63867.2

regularly scheduled work week, downward adjustments to account, for example, for occasions when a Sales Associate calls out sick and works fewer than the number of her regularly scheduled hours in a particular work week.  (*Id.* ¶ 21.)  Downward adjustments are calculated in a manner similar to the way upward adjustments are calculated.  (*Id.* ¶ 22.)  First, the presumptive weekly salary is divided by five to arrive at the employee's daily rate of pay.  (*Id.*)  Then, that daily amount is subtracted from the presumptive semi-monthly salary for each day the employee was absent during a work week that ended in the semi-monthly pay period at issue. (*Id.*)

Although this payroll system is uniform and generally was applied uniformly, it was not applied completely the same with respect to all employees at all times, principally because it depends on calculations that are subject to human error. Mistakes have, in fact, been made from time to time.  (*See id.* ¶¶ 24-28.)  However, these mistakes were not at all systemic, and affected only a small number of employees.  (*See id.*)  Some of these mistakes worked in Sales Associates' favor, just as others worked to their detriment.  (*See id.*)  However, such mistakes were the result of simple clerical error, not a specific practice or policy.  (*Id.*)

7

## ARGUMENT

## POINT I

## CERTIFICATION OF A CLASS FOR THE SEMI-MONTHLY PAY PERIOD CLAIM SHOULD BE DENIED BECAUSE THAT CLAIM IS NOT PLED IN THE COMPLAINT

The assertion set forth at Robledo Aff't ¶¶ 18-21 to the effect that defendants' semi-monthly payroll system deprived plaintiffs of four weeks of pay per year by paying them 24 times a year does not appear anywhere in the Second Amended Class and Collective Action Complaint.  The Court should not certify, even conditionally, a collective action for a claim that is not alleged in the Complaint.

Fed.R.Civ.P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The rule is intended to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  It is fundamental pleading practice that a party may not seek recovery for a claim that is not asserted in her complaint.

Logically, so as not to prejudice a defendant, a party may not seek conditional certification of a collective action based on claims not alleged in her complaint.  *See Guan Ming Lin v. Benihana Nat'l Corp.,* 275 F.R.D. 165, 170-71, 171 (S.D.N.Y. 2011) (denying collective action for meal credit claim because claim was not related to overtime and minimum wage claims alleged in complaint); *Castillo v. P&R Enterprises, Inc.,* 517 F.Supp.2d 440, 446 (2007) ("[p]laintiffs cannot in the instant motion expand the scope of the proposed [FLSA] class beyond that which is contained in their Complaint").

This rule should apply particularly to the semi-monthly pay claim plaintiffs are trying to raise here, because plaintiffs' memorandum of law does not even indicate whether that

8

claim arises under the FLSA or State law.  (*See* Dkt. 85.)  *Cf.  Boutros v. JTC Painting and Decorating Corp.,* No. 12 Civ. 7576, 2013 WL 3110943, *4 (S.D.N.Y. June 19, 2013) ("the court would not certify a FLSA collective action based on claims sounding solely in state law").  When plaintiff Robledo tried to amend her complaint to allege that claim at an earlier stage of this case (*see* Dkt. 11, Dkt. 12 & ex. B), she pled this claim as arising under the New York Labor Law ("NYLL") § 191(1)(d), not the FLSA.  (*See* Dkt. 12 & ex. B at ¶¶ 3, 44-48, 69-73.)  Defendants demonstrated that her claim did not lie under the NYLL.  (*See* Dkt. 10 at 4-7, citing, *inter alia, Nakahata v. New York-Presbyterian Healthcare System, Inc.,* No. 10 Civ. 2661, 2011 WL 321186, *3 (S.D. N.Y. Jan. 28, 2011), and *Myers v. Hertz Corp.,* 624 F.3d 537,545 n.1 (2d Cir. 2010), *cert. denied.* 132 S.Ct. 368 (2011).)  Plaintiff Robledo withdrew that motion and later made a second motion to amend, once again alleging that defendants' semi-monthly payroll system violates State law, not the FLSA.  (*See* Dkt. 34, and Dkt. 35 at 5-7.)  But she withdrew that motion, too.  (*See* Dkt. 52.)

Defendants would be prejudiced by having to defend against collective certification of a semi-monthly pay claim that is not alleged in the Complaint, that was previously asserted under State law before it was withdrawn, and that plaintiffs' supporting memorandum of law does not even assert arises under the FLSA.  *See* Dkt. 85.

Nor, of course, should the Court overlook the fact that plaintiffs are trying to back-door their semi-monthly pay claim into this action through the Robledo affidavit when they know they are not permitted to allege it in their Complaint.  After plaintiff Robledo's first two attempts to move to amend her original complaint foundered, the Court ordered her to "serve and file a motion" by November 2, 2102, "seeking leave to plead all claims that she wishes to plead, on her own behalf and/or on behalf of the putative plaintiff class.  This

deadline shall be considered final and will not be extended, absent extraordinary cause."
(Dkt. 52.)

Ms. Robledo did not assert her semi-monthly pay claim in the Second Amended
Class and Collective Action Complaint she filed in response to this Order.  She should
not now be permitted brazenly to flout the Court's Order by asserting a claim in her
affidavit that she did not assert in that Complaint.

## POINT II

### PLAINTIFFS HAVE FAILED TO MAKE THE NECESSARY SHOWING THAT THEY WERE THE VICTIMS OF A COMMON PRACTICE OR POLICY THAT VIOLATED THE LAW AND THAT SIMILARLY SITUATED PERSONS EXIST

**A. Although Only a "Modest Showing" Is Required for Certification of a Collective Action, Substantial Allegations Are Required, and Conclusory Allegations and Speculation Based on a Plaintiff's Personal Experiences Are Insufficient**

The FLSA permits an individual to bring an action for unpaid overtime on his own
behalf and that of "other employees similarly situated." 29 U.S.C. § 216(b).  Whether a
court elects to certify a collective action on behalf of others similarly situated, require class-
based discovery, and authorize the issuance of the kind of notice plaintiffs request on the
instant motion is a matter left to the district court's sound discretion in the management of
its docket.  *See, e.g., Hoffman-LaRoche, Inc., v. Sperling*, 493 U.S. 165 (1989), where the
Court held that district courts "have *discretion, in appropriate cases* . . . to implement" the
collective action mechanism under Section 216(b) "by facilitating notice to potential
plaintiffs."  493 U.S. at 169 (emphasis added).  *See also, Myers*, 624 F.3d at 555 n.10
(nothing in the FLSA requires court-authorized notice, although it "may be a useful 'case
management' tool for district courts to employ in 'appropriate' cases'") (citing *Hoffman-
LaRoche*, 493 U.S. at 169); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp.2d 1231,

63867.2

1233 (M.D. Ala. 2003) ("[t]he power to authorize notice must, however, be exercised with discretion and only in appropriate cases").

Moreover, before certifying a collective action and authorizing such notice, "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits" of the case. *Mike v. Safeco Ins. Co. of Am.,* 274 F.Supp.2d 216, 220 (D. Conn. 2003).

The initial question for the court to determine in deciding whether to exercise this discretion is "whether similarly situated plaintiffs do in fact exist." *Myers* at 555. "Plaintiff must at least provide evidence that the proposed class members are similarly situated." *Salomon v. Adderlay Indust., Inc.,* 847 F.Supp.2d 561, 563 (S.D.N.Y. 2012).

Although only a "modest factual showing" is required, "[c]ertification is not automatic. 'While the factual showing that [the putative representative] must make at this stage is 'modest,' it must be 'sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Vasquez v. Vitamin Shoppe Industries*, No. 10 Civ. 8820, 2011 WL 2693712, * (S.D.N.Y. Jul. 11, 2011). "To make the factual showing required at this first stage, a Plaintiff cannot rely on unsupported assertions. The factual showing, even if modest, must still be based on some substance." *Ali v. New York City Health & Hosp. Corp.,* No. 11 Civ. 6393, 2013 WL 1245543, *2 (S.D.N.Y. Mar. 27, 2013); *Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 480 (S.D.N.Y. 2010).

11

## B. **The Robledo Affidavit Fails to Make the Necessary Showing**

### 1. **There is no showing that the semi-monthly pay system violates the law.**

Ms. Robledo's affidavit alleges, quite correctly, that all of defendants' Sales Associates are paid according to the same semi-monthly pay system. There is, in fact, no doubt that defendants' Sales Associates are similarly situated insofar as they are all paid on a semi-monthly basis pursuant to the same semi-monthly payroll system.

However, as noted in the cases cited above, in order to be entitled to certification of a collective action, the plaintiffs have to make a "factual showing," however modest, that they were the victims of a common policy or plan *that violated the law*." *Levinson v. Primedia Inc.,* No. 02 Civ. 2222, 2003 WL 22533428, *1 (S.D.N.Y. Nov. 6, 2003) (emphasis added). Even if the semi-monthly pay allegations asserted in Ms. Robledo's affidavit are properly before the Court (which they are not; *see* Point I, *supra* at 7-9), they fail because this is the rare case in which, even though plaintiffs meet the "similarly situated" test, there is no factual showing of a common policy or plan that *violates the law*.

Semi-monthly pay programs are expressly permitted by law. *See* New York Labor Law ["NYLL"] § 191(1)(d); *see also,* U.S. DOL Admin. Opinion, 1983 DOLWH LEXIS 30 (Jan. 14, 1983) (herein "Opinion Letter") (copy attached). Moreover, the semi-monthly pay program as administered at the Bond stores, as described in the Caloobanan Declaration, hews closely to the example set forth in the Opinion Letter – (a) the Sales Associate's straight time hourly rate of pay (*e.g.,* $26 per hour) is multiplied by the number of hours she is scheduled to work in a week (*e.g.,* 35 hours) to calculate a presumptive weekly "salary" (*e.g.,* $26 x 35 = $910); (b) the presumptive

63867.2

weekly "salary" is multiplied by 52 to determine the presumptive annual "salary" (*e.g.,* $910 x 52 = $47,320); (c) the presumptive annual "salary" is divided by 24 to calculate a presumptive semi-monthly "salary" (*e.g.,* $47,320 ÷ 24 = $1,971.67) that is paid each semi-monthly pay period in which the Sales Associate neither misses any work time nor works any hours in excess of her regularly scheduled hours, (d) the presumptive semi-monthly "salary" is reduced by one-fifth of the presumptive weekly "salary" for each day the Sales Associate misses (because, for example, of illness) in any work week that ended during the semi-monthly pay period at issue, and (e) an extra check is provided, in addition to the one for the presumptive semi-monthly "salary," in an amount equal to the straight-time hourly rate of pay for each hour worked over 35 and less than 40 in any work week that ended during the semi-monthly pay period at issue, *plus* one and a half times the straight-time hourly rate of pay for each hour worked in excess of 40 in any such work week.  This system thus results in 52 weeks' wages paid over 24 semi-monthly pay periods, with overtime pay provided for overtime hours worked.  *Compare,* Opinion Letter at 2 *with* Caloobanan Dec. ¶¶ 7-23.

It appears that even though plaintiffs tried twice – without success – to plead their semi-monthly pay program claim as a violation of State law, they now think the Court should certify a collective action under the federal FLSA because Ms. Robledo has come to "realize and appreciate" that each of the 24 semi-monthly paychecks she received was for only two weeks, not half a month, and hence that she (and others) were paid for only 48 weeks a year, not 52.  Even assuming *arguendo* that it would violate some provision of the FLSA that plaintiffs did not plead in the Complaint and have chosen not to share with the defendants or the Court in their supporting memorandum of law (*see* Dkt. 85),

63867.2

Ms. Robledo's wholly conclusory allegation falls far short of even the "lenient" standard that governs motions for conditional certification of a collective action.

Ms. Robledo's allegations regarding the supposedly missing four weeks of pay are as follows, *verbatim*: "The paychecks that the retail sales employees [received?] amounted to pay for forty-eight weeks a year rather than fifty-two weeks a year. I know this because Ms. Hormidas Caloobanan told me that each paycheck was for two weeks of work. I now realize and appreciate that the payroll system described above resulted in me and other retail sales employees losing between two and four weeks of pay each year, because each year is composed of approximately fifty-two full weeks."

Simply put, this is not an adequate factual showing that defendants' semi-monthly pay program actually short-changed any Sales Associate by four weeks' pay, whether or not that would constitute a violation of the FLSA.

"[T]he plaintiff's burden may be 'very limited,' and require only a 'modest factual showing,' but that burden is not non-existent and the factual showing, even if modest, must still be based on some substance." *Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 480 (S.D.N.Y. 2010) (internal citations omitted). The assertion that defendants' semi-monthly pay program results in Sales Associates' being paid for only 48 weeks a year, even as augmented by the hearsay statement that Ms. Caloobanan told Ms. Robledo that each paycheck is for two weeks, is pure conclusion, if not speculation (or both), particularly when considered in light of the explanation of how the system works that Ms. Caloobanan's affidavit provides.[4] "Limited anecdotal hearsay" is insufficient,

---

[4]   It should be noted that defendants do not cite the Caloobanan affidavit for the purpose of rebutting Ms. Robledo's assertion that the semi-monthly payroll program pays employees for only 48 weeks per year or to encourage the court to make a finding of fact. *Cf. Lynch v. United*

14

*Levinson, supra,* 2003 WL 22533428 at *2, yet all that Ms. Robledo proffers is limited anecdotal hearsay coupled with conclusory speculation.  *See also, Stubbs v. McDonald's Corp.,* 227 F.R.D. 661 (D.Kan. 2005) ("[w]hile plaintiff [need not] come forward with evidence of actual proof of a decision, policy or plan, the initial ad hoc FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone").

That is insufficient even at this stage of the case.  The Court should decline to authorize conditional certification of a collective action based on Ms. Robledo's allegations about defendants' semi-monthly payroll system.

### 2. Ms. Robledo's allegations of unpaid overtime are not tied by any factual nexus to any common practice or policy of the defendants, and her allegations that others are similarly situated in respect of unpaid overtime are conclusory and without substance.

To demonstrate that a putative class included victims of a "common policy or plan that violated the law," plaintiffs "bear [the] burden" of "proffer[ing] substantial allegations of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violations."  *Romero v. H.B. Automotive Group, Inc.,* No. 11 Civ. 386, 2012 WL 1514810, *9 (S.D.N.Y. May 1, 2012) (internal quotations omitted).  Ms. Robledo's allegations of unpaid overtime, as well as her contention that other Sales Associates likewise were not paid overtime, completely fail to allege any nexus between the injury claimed and the policy alleged; in addition, they

---

*Servs. Auto Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007) (at this stage of the case, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations").  Rather, we cite Ms. Caloobanan's testimony to demonstrate the inadequacy and conclusory nature of Ms. Robledo's affidavit testimony. Particularly in light of the fact that Ms. Caloobanan not only states, but documents, the fact that the semi-monthly pay system compensates Sales Associates for all 52 weekly work weeks in the year, it hightlights the inadequacy and conclusory nature of Ms. Robledo's assertion that the system pays for only 48 weeks per year.

63867.2

are utterly conclusory and unsupported by factual substance.  Thus, they are insufficient to carry even plaintiff's light burden on this motion.

This is demonstrable in the first instance by examining the text of those allegations.  They are:

- [M]any retail[] sales employees spoke with one another and also complained to their store managers about how their hours were being calculated for payroll purposes.  (Robledo Aff't ¶16.)

- Throughout my employment, I consistently worked more than forty (40) hours a week.  I know this because on weekdays, the store where I worked was open from 10:30 AM to 8:30 PM (ten hours) and I had to be at the store a half an hour before opening time, and had to remain at the store between fifteen to twenty (15-20) minutes after closing time.  I, along with other retail sales employees, was not allowed to take breaks, and often was not permitted to take a lunch hour.  Therefore, even on those weeks when I worked only five days, I was working in excess of forty hours a week, and closer to fifty (50) hours a week.  (Robledo Aff't ¶ 22.)

- Moreover, I often was asked to work an additional or sixth day each week, particularly during Christmas holiday seasons.  I did not receive any additional compensation for that extra day.  Ms. Rahme occasionally promised me that I would be given paid time off in the future to "make up" for extra days worked during busy periods, but to the best of my recollection this never happened.  Based on my person [sic] knowledge, similar promises were made to other retail sales employees when they were asked to work extra days.  However, no compensatory paid time-off was provided.  (Robledo Aff't ¶¶ 23-24.)

- In [sic –I] know that my experiences related above were typical of those of other retail sales employees because we often spoke about these matters with one another.  (Robledo Aff't ¶ 28.)

These allegations constitute a hallmark failure to meet even the minimal standards of factual substance for certification of a collective action.  They are very similar to, and in some instances virtually identical with, statements that the court found insufficient to sustain the plaintiffs' burden on a motion for conditional certification of a collective action in *Ali, supra,* 2013 WL 1245543, where the court stated,

16

63867.2

> While the Court may consider hearsay evidence in the first step of the conditional certification analysis, here the *only* relevant evidence plaintiff submits that there are similarly situated class members who worked over 40 hours a week and were not paid overtime wages pursuant to a common policy or plan is uncorroborated, anecdotal hearsay about the hours plaintiff believes others worked. . . . The sole basis for this belief is that plaintiff "had conversations with other respiratory therapists about the fact that we worked in excess of forty hours a week." . . . Plaintiff does not provide any information about where these respiratory therapists worked or, more importantly, why they worked more than 40 hours (*i.e.*, because of a common plan or policy of defendants). Indeed, he has not even answered the latter question with regard to himself.

*Id.* at *3 (internal record references omitted).

In the instant case, Ms. Robledo's affidavit is just as flawed as the *Ali* affidavit – it is based mainly on conversations with other Sales Associates, it is supported solely by uncorroborated hearsay evidence, and it does not provide any information about which other Sales Associates worked overtime without being compensated for it or why they were not compensated for it. *See Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying conditional certification where the plaintiff alleged, based only on "limited anecdotal hearsay," that other nurses were not paid overtime); *Levinson v. Primedia Inc.*, *supra*, 2003 WL 22533428 at *2 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where the plaintiffs alleged that they were not paid minimum wage or overtime, but provided no factual evidence other than the conjecture contained in the plaintiffs' affidavits that other employees were subject to the same pay policies); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, * 11 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification because plaintiff "identifies five other Retail Consultants by name, employed at the same stores as Plaintiff, that she claims told her that they also

17

63867.2

did not receive pay for overtime worked.  [Plaintiff] provides no details about these conversations, and provides no affidavits from any other employees corroborating her claims.  This reliance on limited anecdotal hearsay does not persuasively show that [the employer] likely has a common plan or practice").

Indeed, the Robledo allegations are so vague as to suggest that they would be vulnerable to a Rule 12 motion to dismiss under *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114-15 (2d Cir. 2013) (plaintiffs failed to state a plausible overtime claim because they did not allege a "single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours"; it was insufficient to allege that plaintiff "typically" worked 37.5 hours a week and "occasionally" worked an additional 12.5 hour shift, or that she "typically" worked 3 hours per week and "approximately twice a month" worked between 37.5 and 40 hours).  Such a shortcoming can form the basis for denial of a motion for conditional certification.  *See Boutros, supra,* 2013 WL 3110943 at **3 - *4 (denying conditional certification in part on the ground that plaintiff's supporting declarations provided no further detail than that held insufficient in *Lundy* to state a claim as a matter of pleading requirements).  As did the plaintiffs in *Lundy* and *Boutros,* the Robledo affidavit fails to allege even a single workweek in which she worked at least 40 hours without being paid overtime wages.

And, of course, Ms. Robledo's affidavit is entirely inconsistent, and impossible to reconcile, with the fact that at least one employee at each of the defendant's stores did indeed receive paid overtime.  *See* Caloobanan Dec. ¶¶ 27 – 41 & ex, I – Q.

In short, Ms. Robledo fails to make any showing whatsoever that defendants had a plan or policy of requiring employees to (a) work through lunch, (b) come to the store

18

a half hour before the store opens, (c) work for 15-20 minutes after the store closes, or (d) work an extra day without paying them for such time and without paying them at overtime rates when such alleged requirements result in workweeks of more than 40 hours.  Her bare allegations are not supported by any factual showing and are not tied by any factual nexus to any plan or policy of the defendants, and thus fall squarely within the holdings of *Ali, Barfield, Levinson,* and *Eng-Hatcher, supra.*

In addition to these legal flaws, it should not be overlooked that there is ample evidence which shows that, for example, even if Ms. Robledo was required to work through her lunch period, as she claims, no one else was.  *See* Declaration of Estefania Zuluaga, signed October 13, 2013 ("Zuluaga Dec."), ¶¶ 4 – 10; Declaration of Benito Ramirez, signed October 14, 2013 ("Ramirez Dec.")  ¶¶ 4 – 8; Declaration of Charlene Walsh, signed October 15, 2013 ("Walsh Dec.") ¶¶ 4 – 9; Declaration of Jennifer Colon, signed October 16, 2013 ("Colon Dec.") ¶¶ 5 – 8; and Declaration of Alberto Caballero, signed October 16, 2013 ("Caballero Dec.") ¶¶ 4 – 10 (all stating that Sales Associates at the Bond stores are not required to work through their one-hour lunch breaks).

Moreover, there is ample evidence that Sales Associates other than Ms. Robledo were not required to come to the stores or to work before the stores opened, and that Sales Associates other than Ms. Robledo were not required to remain at the stores after the stores closed other than on specific occasions when they were paid for their time. *See* Zuluaga Dec. ¶¶ 11 – 18; Ramirez Dec. ¶¶ 9 – 15; Walsh Dec. ¶¶ 10 – 16; Colon Dec. ¶¶ 9 – 14; Caballero Dec. ¶¶ 11 – 18 (all stating that Sales Associates at the Bond stores were not required to work before the stores opened or after the stores closed).

63867.2

Particularly in light of the insubstantiality of plaintiffs' showing on the instant motion, plaintiffs should not be heard to argue that the Court should go ahead and issue a conditional certification because any overinclusiveness can be corrected at the second, more rigorous stage of review, when defendants may move to decertify a collective class that is overbroad or whose members are not sufficiently similarly situated.  "Courts must be mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching," with the "loss of the efficiencies envisioned by the drafters of the FLSA."  *Rudd v. T.L. Cannon Corp.,* 2011 WL 831446, *6 (N.D.N.Y. Jan. 4, 2011).  "[I]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated. . . . Thus, the plaintiffs' showing in an FLSA case to obtain approval as a collective action, while modest, must be based on some substance."  *Guillen v. Marshalls of MA, Inc,* 841 F.Supp.2d 797, 803 (S.D.N.Y. 2012) (quoting *Adair v. Wisconsin Bell, Inc.,* No. 08 Civ. 280, 2008 WL 4224360, *6 (E.D. Wis. Sept. 11, 2008).

In sum, the Robledo affidavit falls woefully short of meeting even the "lenient," "modest factual showing" standard required for certification of a collective class consisting of Sales Associates who supposedly were required to work through lunch, come to work before the store opened, remain at work after the store closed, or work an extra day and not receive overtime pay for such work.  The Court therefore should deny plaintiffs' motion for such certification.

63867.2

## POINT III

## IF THE MOTION WERE TO BE GRANTED, PLAINTIFFS SHOULD BE PERMITTED CONTACT INFORMATION FOR SALES ASSOCIATES EMPLOYED WITHIN THE LAST TWO YEARS, NOT THREE

Plaintiffs' Notice of Motion declares that they seek disclosure of contact information for certain retail sales employees (*see* n.1, *supra* at 1) "within the statutory time period (*i.e.,* three (3) years from the date of dissemination of court-authorized notice)."

The "statutory time period" is two years, not three.  *See* 29 U.S.C. § 255(a).  The limitations period is extended to three years only if the violation is willful, a point as to which the plaintiff bears the burden of proof.  *Young v. Cooper Cameron Corp.,*  586 F.3d 201, 207 (2d Cir. 2009).  To sustain this burden, the plaintiff has to make a factual showing that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Ramirez v. H.J.S. Car Wash Inc.,* No. CV-112-2664. 2013 WL 1437600 *4 (E.D.N.Y. Apr. 9, 2013), *citing McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2012 WL 1358739, *7 (S.D.N.Y. Apr. 19, 2012).

It is not enough for the plaintiff to show mere negligence, or even that the employer acted unreasonably, if she fails to show that the employer acted recklessly. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 n.13 (1988).  "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *Gunawan v. Sake Sushi Rest.*, No. 09-CV-5018, 2012 WL 4369754, *6 (E.D.N.Y. Sept. 24, 2012) (quoting *McLaughlin,* 486 U.S. at 132).

63867.2

Plaintiffs proffer no evidence whatsoever as to whether defendants' violations, if any, were willful. Indeed, the Hormidas declaration demonstrates a focused effort on trying to comply with the FLSA's overtime pay requirements, and that any failures to pay as required by the FLSA (any payments in excess of what the law requires) were a result of clerical oversight rather than reckless conduct. *See* Caloobanan Dec. ¶¶ 24 – 28.

Inasmuch as plaintiffs have not even attempted to carry their burden of showing that any violations defendants allegedly committed were willful, much less succeeded at carrying that burden, the limitations period is two years, not three. Accordingly, if disclosure of employee contact information is to be provided, it should be for two years prior to dissemination of any notice of pendency, not three.

## POINT IV

### DEFENDANTS SHOULD BE PROVIDED WITH AN OPPORTUNITY TO DEVELOP A MUTUALLY AGREED UPON NOTICE OF COLLECTIVE ACTION

If the Court were to grant the instant motion, the Court should refuse to issue the form of notice that plaintiffs have proposed. *See* supporting declaration of Walker G. Harman, Jr., Dkt. 86, ex. A. That notice is flawed in any number of ways. Among those flaws is that it fails, for example, to advise would-be opt-in plaintiffs that by opting in, they would subject themselves to discovery requirements and depositions. It refers to a claim that defendants maintain "a policy of refusing to consider paying overtime compensation to . . . employees for hours worked in excess of 40 in a week" as though such a putative policy were a separate claim from the claim that defendants simply failed to pay overtime compensation when earned.

63867.2

If the Court grants any part of the plaintiffs' motion, the Court should order the parties confer and, within 14 days, submit a mutually acceptable Notice of Collective Action for review by and endorsement as an Order of the Court.

## CONCLUSION

For all of the foregoing reasons, defendants submit that this action is not appropriate to proceed as a collective action.  Defendants respectfully request that the motion for conditional certification be denied in its entirety and that defendants be awarded such other relief as the Court may deem just and proper.

Dated:   New York, New York
             October 16, 2013

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: _____
              Dennis A. Lalli (DAL-0575)
              Barbara V. Cusumano (BC 7561)

330 Madison Avenue, 29th Floor
New York, New York  10017
(646) 253-2300 (tel.)
(646) 253-2301 (fax)

Attorneys for the Defendants

63867.2



[NO NUMBER IN ORIGINAL]

U.S. DEPARTMENT OF LABOR

*1983 DOLWH LEXIS 30*

January 14, 1983

**JUDGES:** William M. Otter, Administrator

**OPINION:**

 [*1]
Thank you for your letter of October 4, 1982, asking on behalf of one of your clients several questions regarding the calculation of overtime compensation under the Fair Labor Standards Act.

You state the employees of your client currently work an 8-hour shift. They are paid a salary for a 40-hour workweek. The salary is reduced by the hourly rate ($ 10.00) for each hour not worked in a short workweek. Employees are paid one and one-half times their hourly rate for all hours worked over 40 in a workweek. The workweek starts on Monday and ends on Sunday. The payroll period is semi-monthly. Your client is considering a change to a 12-hour 6 week repeating schedule of 10 workdays "on" followed by 4 days "off", but needs to continue using the semi-monthly pay period.

Since you ask several questions about the computation of overtime pay for employees who would be employed under the new schedule, we will respond to them in the order presented. Our responses presume that none of the Federal Government contract laws which require daily overtime compensation are applicable to your client's employees.

You first ask "What is the method for calculating overtime for employees on 12-hour [*2]   workshift schedules who are paid semi-monthly?

As explained in Section 778.103 of 29 CFR Part 773, copy enclosed, if an employee is covered by the Act and is not exempt from its overtime pay requirements, the employer must total all hours worked by the employee and pay overtime compensation for each hour worked in excess of 40 hours in a workweek. When pay periods are other than weekly or bi-weekly, it is possible that a pay period will end in the middle of a workweek. In such cases, as explained in section 778.106, overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.

Your second and third questions ask whether there is a method by which a constant salary may be paid for pre-scheduled hours of work, which include overtime hours of work.

Where the wages due an employee are properly computed on a workweek basis, an employer may pay the determinable portion of such wages in semi-monthly installments without destroying the validity of the regular rate of pay or violating the overtime pay provisions of the Act. However, where an employee worked more than, or less than, the number of hours which was used [*3]   to compute the semi-monthly wage installment, appropriate additions to, or deductions from such semi-monthly wage installment, appropriate additions to, or deductions from such semi-monthly amount would have to be made on the regular pay day for the pay period in which such workweek ended. In the case of excused absences for which compensation is paid under the employment contract, no deductions would be required for non-overtime weeks, and only overtime pay deductions would be required in overtime weeks.

1983 DOLWH LEXIS 30, *

For example, where there are alternating workweek schedules of 43 hours and 36 hours, the semi-monthly wage installment amount would be computed as follows:

hourly rate = $ 10

36-hour workweeks

36 hours x $ 10 an hour = $ 360 per week

x 26 weeks = $ 9,360

48-hour workweeks

48 hours x $ 10 an hour = $ 480 per week

+ 8 hours x $ 10 x 1/2 (overtime premium) = $ 40

total weekly pay = $ 520

x 26 weeks = $ 13,520

yearly pay = $ 22,880

$ 22,880 per year / 24 (semi-monthly pay periods) = $ 953.33

If, during a pay period, an employee worked 40 hours during a workweek instead of the scheduled 36 hours, he/she would be $ 993.33 ($ 953.33 + 4 hours x $ 10) at [*4]   the net semi-monthly pay day. Alternatively, if, during a pay period, an employee worked 44 hours during a workweek instead of 48 hours, he/she would be due $ 893.33 ($ 953.33 - 4 hours x $ 10 x 1 1/2) at the next semi-monthly pay day.

Under your client's proposed schedule, an employee would work a 6-week rotating schedule composed of 4 workweeks of 36 hours and 2 workweeks of 48 hours. Such a schedule is not easily converted to a semi-monthly wage installment, since the schedule would not average out over a year. However, inasmuch as a three-year average and a 3-workshift average result in the same semi-monthly wage installment amount, we will illustrate the latter.

The following workweek compositions would occur for the three shifts which you described over the period of one year.

A: first shift = 36 weeks of 36 hours and 16 weeks of 48 hours

B: second shift = 34 weeks of 36 hours and 18 weeks of 48 hours

C: third shift = 36 weeks of 36 hours and 16 weeks of 48 hours

Using the weekly salary amounts from the alternating workweek schedules illustrated above, the following annual earning computations would result:

A: first shift = 36 weeks x $ 360 + 16 weeks x $ 520 =   [*5]   $ 21,280

B: second shift = 34 weeks x $ 360 + 18 weeks x $ 520 = $ 21,600

C: third shift = 36 weeks x $ 360 + 16 weeks x $ 520 = $ 21,280

tri-shift annual earnings $ 64,160

1983 DOLWH LEXIS 30, *

$ 64,160 / 3 shifts = $ 21,386.67, the average yearly pay.

$ 21,386.67 / 24 (semi-monthly pay periods) $ 891.11

Your fourth question asks whether there would be any advantage to using a bi-weekly pay period rather than a semi-monthly pay period.

One of the primary disadvantages encountered by employers using a semi-monthly pay period is that employees often look at the number of hours of work for which they were paid and assume they were not properly paid. For example, during a semi-monthly pay period an employee could work 48 or 96 hours and not be due any overtime compensation. This is so because the semi-monthly pay period encompasses more than two workweeks. Assuming an employee did not work more than 40 hours in any one workweek, overtime premium pay would not be required. However, the employee may feel that because he or she worked more than 80 hours in the pay period he or she should be paid overtime compensation.

In addition to the possible misunderstanding by employees with regard to the [*6]   proper computation of overtime compensation, there would be additional recordkeeping responsibilities for the employer. That is time worked during a prior pay period would have to be reviewed when preparing the payroll to determine whether the semi-monthly allocation needs adjustment to reflect additional or fewer hours of work than those scheduled hours used to calculate the semi-monthly allocation amount.

We trust the above is responsive to your inquiry. However, if you have further questions, please do not hesitate to contact us.

Sincerely,

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Labor & Employment LawWage & Hour LawsCoverage & DefinitionsOvertime & Work Period