UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

VERONICA ROBLEDO, individually and on
behalf of all others similarly situated,

                            Plaintiffs,

           - against -

NO. 9 PARFUME LEASEHOLD and
LAURICE RAHME, individually,

                      Defendants.

-------------------------------------------------------------------X

**DECLARATION OF
HORMIDAS CALOOBANAN**

No. 12 Civ. 3579 (ALC)(DF)

STATE OF NEW YORK     )
                        : ss.:
COUNTY OF NEW YORK   )

HORMIDAS CALOOBANAN hereby declares under penalty of perjury as follows:

1.     I am employed by Laurice El Badry Rahme Ltd. in the position of Director, Sales Administration, and have been so employed since June 30, 1995. I make this affidavit in opposition to plaintiffs' motion for conditional certification of a collective action on my own personal knowledge, except as to matters stated to be on information and belief and as to such matters I believe it to be true.

2.     Among my duties as Director, Sales Administration of Laurice El Badry Rahme Ltd. are the preparation and maintenance of payroll records for (a) No. 9 Parfume Leasehold (the "Bond Street" store), (b) Laurice & Co. Uptown, Inc. (the "Mad 1" store), (c) Laurice Madison Ltd. (the "Mad 2" store), (d) Laurice & Bleecker Corp. (the "Bleecker Street" store), (e) Laurice Washington Ltd. (the "Highline" store), and (f)

63785

Laurice Southampton, Inc. (the "Sag Harbor" store), each of which operates a retail boutique store that sells fragrances (collectively, "Bond No. 9" or "Bond"). I am also responsible for the preparation and maintenance of payroll records of the hours worked by each employee at each of the Bond No. 9 stores, as well as for reporting payroll information to Paychex, Inc., the company that processes our payroll, on a semi-monthly basis in connection with our semi-monthly payroll periods.

3.      I am aware that Veronica Robledo claims that each pay period of our semi-monthly payroll schedule, which has 24 paydays per year (one in the middle of each month and once at the end of each month), compensates our Sales Associates for only two weeks of work, with the result that they are paid for only 48 weeks per year, rather than 52. Her claim is untrue and completely insupportable.

4.      I am aware that Ms. Robledo also claims that she did not receive additional compensation for hours she worked in excess of 40 in a week, neither at her regular straight time hourly rate of pay nor at her overtime rate, except on one discrete occasion. That claim, too, is untrue.

5.      During at least the last three years, it was the policy of Bond No. 9 to pay all of our Sales Associates, including Ms. Robledo, for hours worked in excess of 40 in a week at the rate of one and a half times their regular straight time hourly rate of pay (herein, their "regular rate"), and to pay them for 52 work weeks each year, not just 48.

6.      I will explain how Bond No. 9's payroll system works below, and I will provide examples of employees from each of the six stores who were paid at one and a half times their regular rate for hours worked in excess of 40 in a week.

50695.1

**The Bond No. 9 Payroll System – The First Step.**

7.      Our payroll system is based on two principal steps, the first of which assumes that each Sales Associate works a particular number of hours each week, and then calculates the amount she would earn if she worked all the hours she is regularly scheduled to work in each week and no more.  We call this presumptive amount her weekly "salary."  For example, because Ms. Robledo typically worked a 35-hour week, her presumptive weekly "salary" was based on 35 hours of work.

8.      We start by multiplying the weekly number of hours the Sales Associate works by her regular straight-time hourly wage rate, to calculate the weekly salary she would earn if she worked her regularly scheduled work week.  For example, in the case of the Ms. Robledo, her straight-time hourly wage rate was $26, so her presumptive weekly salary was $26 x 35 = $910.

9.      The Sales Associate's presumptive semi-monthly rate of pay is calculated next.  First her weekly salary is multiplied by 52 to get her presumptive annual salary.  Then we notify Paychex of the presumptive annual salary, and they divide that amount by 24 to derive the Sales Associate's presumptive semi-monthly salary.

10.      For example, in the case of the Ms. Robledo, 52 times her weekly salary of $910 yielded an annual salary of $910 x 52 = $47,320.  Exhibit A attached to this affidavit is a copy of the e-mail I sent to Paychex on October 15, 2010 to notify them that Ms. Robledo's annual salary would be $47,320 starting October 18, 2010.  Notably, I informed Paychex that this salary was "[b]ased on $26/hr x 35-hrs x 52-weeks = $47,320."  Paychex then was supposed to divide that number by 24 to derive her semi-monthly salary of $1,971.67.  ($47,320 ÷ 24 = $1,971.67.)

50695.1

11.    Ms. Robledo's semi-monthly salary of $1,971.67 is the amount she received each semi-monthly pay period in which she worked no overtime and was not docked for any absences.  Exhibit B attached to this affidavit is a copy of the paycheck Ms. Robledo received for the semi-monthly pay period ending February 15, 2011.  It is an example of a paycheck that Ms. Robledo received for a pay period in which she worked her regular 35-hour work weeks without working any overtime and without missing any time due to absence.  It shows that her salary for this semi-monthly pay period was $1,971.67.

12.    Thus, if Ms. Robledo (or any other Sales Associate) were to work 52 weeks, working a regular schedule of 35 hours per week and getting paid $26 per hour for each of those hours, she would earn and be paid $47,320.  ($26 x 35 hours per week x 52 weeks = $47,320 for the year.)  In such an example, payment on a semi-monthly pay schedule would mean that the Sales Associate received 24 checks in the gross amount of $1,971.67 each, and that she would have been paid $910 for each of 52 weeks, not 48.

**The Bond No. 9 Payroll System – The Second Step.**

13.    I stated above that the Bond No. 9 payroll system is based on two principal steps.  The second step is that after the Sales Associate's presumptive semi-monthly salary is derived, it is adjusted it up or down in each semi-monthly pay period, when I report payroll information to Paychex for that period.  The adjustment depends on whether the Sales Associate (a) worked any straight-time hours in excess of 35 but fewer than 40 in any of the 7-day work weeks (Monday to Sunday) that ended during the semi-monthly pay period at issue, (b) worked any overtime (that is, hours in excess

4

of 40) in any such work week, or (c) missed any days of work during any such work week. (This assumes that the Sales Associate's regularly scheduled work week was 35 hours; some Sales Associates have a regularly scheduled work week of 37.5 hours, some have a regularly scheduled work week of 40 hours, and some have regularly scheduled work weeks of fewer than 35 hours.)

14.  In addition, there are commission payments or, for exempt employees such as store managers, bonus payments.

15.  The upward adjustments ordinarily are paid with a separate check.

16.  For example, two work weeks ended during the semi-monthly pay period that ended on December 31, 2010; one on Sunday, December 19, and the other on Sunday, December 26, 2010. During the week that ended December 19, 2010, Ms. Robledo worked 48 hours due to the busy holiday season and because she had volunteered to work an extra day in return for overtime compensation. So when I e-mailed the hours she worked that week to Paychex, I instructed them to issue a separate check to Ms. Robledo, in addition to her regular semi-monthly check, for 5 hours at her regular straight-time hourly rate ($26 per hour for the 35th through 40th hours she worked that week), plus 8 hours at her overtime rate ($39 per hour for the 8 hours she worked in excess of 40 that week).

17.  Exhibit C attached to this affidavit is a copy of Ms. Robledo's regular paycheck for the semi-monthly pay period ending December 31, 2010 in the gross amount of $1,971.67. Exhibit D is a copy of Ms. Robledo's separate paycheck for the pay period ending December 30, 2010 in the gross amount of $442.00, consisting of 5

50695.1

straight time hours at $26 per hour for a total of $130.00 in extra straight time pay, plus 8 overtime hours at $39 per hour for a total of $312.00 in overtime pay.

18.     Exhibit E attached to this affidavit is a copy of the e-mail by which I reported the Bond No. 9 payroll to Paychex for the semi-monthly pay period ending December 31, 2010. It is typical of the kind of report I make to Paychex twice a month (except that since June 2011, when the Sag Harbor and Highline stores opened, my payroll reports have included information for employees at those stores, and since December 2011, when the Mad 2 store closed, my payroll reports have not included information for Mad 2.)  The last entry on exhibit E contains my instruction to Paychex to prepare a separate paycheck for Ms. Robledo for the 5 extra straight time hours and the 8 overtime hours she worked during the work week that ended December 19, 2010.  It may be noted that in this report I also instructed Paychex to prepare checks for 10 other employees to pay them for overtime hours at "time & a half."  Exhibit E has been redacted to omit the names of all employees other than Ms. Robledo, and the amounts of the bonuses that were paid to exempt employees (store managers).  The instructions to provide an extra paycheck for extra straight time hours and overtime hours remain, as do the instructions to deduct one day's pay from the salary of employees who had missed a day's work in one of the two work weeks that ended during the semi-monthly pay period for which this e-mail was reporting.

19.     I sent exhibit E on Wednesday, December 29, 2010 because both work weeks that ended during this semi-monthly pay period were already over, and there would be no more work weeks ending during that period. Therefore, I did not have to

50695.1

wait until after December 31 in order to give Paychex an accurate listing of the adjustments to be made to the Bond No. 9 payroll for this period.

20.     Each Sales Associate is paid for all time worked during each of the 52 work weeks that are covered by the 24 semi-monthly pay period. This is because the 24 pay periods run from January 1 to December 31 of each year, and they include each of the 52 work weeks that occur in each year. Since my semi-monthly reports to Paychex cover all work weeks that ended during each semi-monthly reporting period, each employee is paid for all time worked during each of the 52 work weeks that are covered by the 24 semi-monthly pay periods.

21.     In paragraph 13 above, I stated that the adjustments made in the second step of the Bond payroll system include, in addition to upward adjustments for hours worked in excess of the Sales Associate's regularly-scheduled work week, downward adjustments to account for, for example, occasions when a Sales Associate calls out sick and works fewer than the number of her regularly scheduled hours in a particular work week.

22.     The downward adjustment is calculated in a manner similar to the way I calculate upward adjustments. When an Sales Associate misses a day's work, I inform Paychex of that fact in my report for the end of the semi-monthly pay period in which the absence occurs. In exhibit E, for example, the phrase "Please deduct 1-day from salary" appears several times. That is how I tell Paychex to make the downward assessment. Then, the presumptive weekly salary that is calculated in the manner described in paragraphs 7 and 8 above is divided by 5 to arrive at the employee's daily rate of pay. Next, an amount equal to that daily rate of pay is subtracted from the semi-

7

monthly salary that is calculated in the manner described in paragraph 9 above for each day the employee was absent during a work week that ended in the semi-monthly pay period at issue.

23.     For example, the first page of exhibit F is a copy of the paystub for Ms. Robledo's pay for the semi-monthly pay period ending January 15, 2011, a period in which she called out absent on January 9, 2011.  The second page of exhibit F is a set of calculations I recently prepared for the Court's convenience to illustrate the way her pay for that week was calculated:  Her presumptive weekly salary of $910 was divided by five to arrive at a daily rate of pay of $182.00.  Then $182.00 was subtracted from her presumptive semi-monthly salary of $1,971.67, resulting in a gross pay of $1,789.67.  Based on my instruction to Paychex to deduct one day's pay from her salary for this period, Paychex issued her a check in the gross amount of $1,789.67 for this period (that is, the period ending January 15, 2011), as shown on the first page of exhibit F.

**I Have Made Mistakes, But Not Systematic Mistakes**

24.     I am human, and our payroll system depends on input from humans and execution by humans at Paychex.  I acknowledge that clerical mistakes have been made from time to time on particular paychecks.  However, these mistakes were not systematic, and affected only a small number of employees.

25.     For example, during the work week ending Sunday, May 8, 2011, Ms. Robledo worked 44.5 hours.  Since Ms. Robledo's weekly schedule was 35 hours, she should have been paid at her regular rate for the 35th through 40th hours she worked during the work week ending May 8, 2011 (that is, 5 hours), *and* at her overtime rate of $39.00 per hour for the 4.5 hours she had worked in excess of 40 hours that week.

8

However, the first page of exhibit G (which is a copy of the paystub for Ms. Robledo's pay

for the semi-monthly pay period ending May 15, 2011) shows that she was paid an

additional 7 hours at her regular rate of $26.00 per hour in addition to her presumptive

semi-monthly salary, instead of 5 hours at her regular rate plus 4.5 hours at her overtime

rate.  As a result of Ms. Robledo's lawsuit, I have learned that this was because of two

mistakes.  First, the calculation of her extra pay erroneously assumed that her regular

week was 37.5 hours instead of 35, so she was credited for only 7 extra hours that week

instead of 9.5 hours, and second, all 7 of those hours were paid at her regular rate, rather

than some at her regular rate and the others at her overtime rate.  The second page of

exhibit G consists of a set of calculations I prepared for the Court's convenience to show

how her pay was determined for this pay period, and what the error was.

     26.    I also learned in connection with this lawsuit that a similar mistake was

made on Ms. Robledo's pay for the work week ending Sunday, June 12, 2011.  She

worked 41.5 hours that week.  The first page of exhibit H is a copy of the extra paystub for

Ms. Robledo's pay for the semi-monthly pay period ending June 15, 2011.  It shows that

she was paid an additional 2.5 hours at her regular rate of $26.00 per hour in addition to

her presumptive semi-monthly salary, and 1.5 hours at her overtime rate of $39.00 per

hour.  Since she had worked 1.5 hours in excess of 40 that week, she was paid the

proper amount of overtime pay she was owed.  However, since her weekly schedule was

35 hours, she should have been paid at her regular rate for the 35th through 40th hours

she worked during that work week – that is, for 5 extra hours.  However, the second page

of exhibit H, which consists of calculations I have prepared for the Court's convenience to

show how her pay for this period was determined, discloses that it was assumed,

9

mistakenly, that her schedule was 37.5 hours, rather than the 35 hours she really worked, which resulted in her being paid for only 2.5 extra hours at her regular rate, rather than the 5 for which she should have been paid.

27.    I have recently learned that mistakes have been made that worked in Sales Associates' favor, as well as to their detriment.  For example, Stephanie Ehlert is a Sales Associate whose presumptive weekly salary, as demonstrated on the second and fourth pages of exhibit I, was based on a 20.5-hour week and a regular rate of $20.00 per hour.  She worked at total of 29 hours at our Mad 1, Bleecker, and Mad 2 stores during each of the work weeks ending May 22, 2011 and May 29, 2011.  The calculations of her extra pay for the hours worked in excess of her regular hours in those weeks that I have prepared for the Court's convenience appear on the fourth page of exhibit I; they show that she worked 8 hours in addition to her regular 20.5 hours in each of those weeks, for a total of 16 extra hours in the semi-monthly pay period that ended May 30, 2011.  Since she did not work in excess of 40 hours in either of those work weeks, she should have been paid at her regular rate of $20 for those 16 extra hours.  However, as shown on the 3rd page of exhibit I, she was paid at one and a half times her regular rate, or $30 per hour, for those 16 extra hours, resulting in payment of an extra $10 for each of these hours (that is, $160) that she did not earn.

28.    The mistakes were the result of simple clerical error.  They were not the result of a specific practice or policy, and it is my belief that in the overwhelming majority of cases, the Sales Associates' extra straight time pay and their overtime pay was calculated accurately.

**Examples of Correctly-Paid Overtime from Each of the Six Stores**

29.    I have set forth below examples of accurate overtime pay calculations

from at least one randomly-chosen Sales Associate from each of our stores.  I believe

that these examples are representative of all of the Sales Associates because

generally, we have no more than two or three Sales Associates at any given time at

each of our stores (although sometimes there are three or four or, on special occasions,

as many as five Sales Associates at the Bond Street store).  These examples show that

it was the rule that when a Sales Associate worked more than 40 hours in a week, she

was paid at one and a half times her regular rate for those hours, and that it was the

rare exception that, because of a mistake in calculation, someone may not have been

paid entirely accurately.  In each instance, the pages that show the calculations on

which the overtime and other pay was calculated are ones that I prepared in connection

with this lawsuit for the convenience of the Court.

30.    Exhibit J contains pay stubs and calculations for Sales Associate Diane

Ludwig Romano, who was on the payroll of our **Mad 1 store**, for the semi-monthly pay

period ending December 15, 2010.  As shown on the second page of exhibit J, her

presumptive weekly salary was based on a 37.5-hour week and a regular rate of $30.00

per hour.  As shown on the fourth page of exhibit J, she worked 45.75 hours during the

work week ending Sunday, December 12, 2010.  Accordingly, her extra paycheck for

the semi-monthly pay period ending December 15, 2010, attached as the third page of

exhibit J, included 2.5 hours of extra pay at her regular rate and 5.75 hours of extra pay

at 1.5 times her regular rate.

50695.1

31.     Exhibit K contains pay stubs and calculations for Sales Associate Mark Vincent Maldonado, who was on the payroll of our **Mad 1 store** in 2012, for the semi-monthly pay period ending February 15, 2012.  As shown on the second page of exhibit K, his presumptive weekly salary was based on a 37.5-hour week and a regular rate of $28.00 per hour.  As also shown on the second page of exhibit K, he worked 45 hours during the work week ending Sunday, February 12, 2012.  Accordingly, his extra paycheck for the semi-monthly pay period ending February 15, 2012, attached as the first page of exhibit K, included 2.5 hours of extra pay at his regular rate and 5 hours of extra pay at 1.5 times his regular rate.

32.     Mark Vincent Maldonado was a Sales Associate on the payroll of the **Mad 2** store in 2010 and 2011, until that store closed at the end of 2011. Exhibit L contains pay stubs and calculations for his pay for the semi-monthly pay period ending October 15, 2011.  As shown on the second page of exhibit L, his presumptive weekly salary at that time was based on a 37.5-hour week, and his regular rate was $28.00 per hour.  As shown on the fourth page of exhibit L, he worked 39 hours during the work week ending Sunday, October 2, 2011 and 46.5 hours during the work week ending Sunday, October 9, 2011.  Accordingly, his extra paycheck for the semi-monthly pay period ending October 15, 2011, attached as the third page of exhibit L, included a total of 4 hours of extra pay at his regular rate (1.5 hours for the week ended October 2, plus 2.5 hours for the week ended October 9) and 6.5 hours of extra pay at 1.5 times his regular rate.

33.     Charlene Walsh was a Sales Associate on the payroll of the **Bleecker Street** store in 2010, 2011, and the first pay period of 2012; after that she was on the Mad 1 payroll.  Exhibit M contains pay stubs and calculations for her pay for the semi-

monthly pay periods ending December 31, 2010 and January 15, 2012. As shown on

the second page of exhibit M, her presumptive weekly salary as of December 2010 was

based on a 35-hour week and a regular rate of $16.00 per hour. As shown on the fourth

page of exhibit M, she worked 48 hours during the work week ending Sunday,

December 19, 2010 and 45 hours during the work week ending Sunday, December 26,

2010. Accordingly, his extra paycheck for the semi-monthly pay period ending

December 15, 2011, attached as the third page of exhibit M, included a total of 10 hours

of extra pay at her regular rate (5 hours for the week ended December 19, plus 5 hours

for the week ended December 26) and 13 hours of extra pay at 1.5 times her regular

rate (8 overtime hours for the week ended December 19, plus 5 overtime hours for the

week ended December 26).

     34.    Exhibit N contains pay stubs and calculations for Charlene Walsh's pay for

the semi-monthly pay period ending January 15, 2012, when she was still on the payroll

of the **Bleecker Street** store. As shown on the second page of exhibit N, her

presumptive weekly salary as of January 2012 was based on a 37.5-hour week and a

regular rate of $22.00 per hour. As shown on the fourth page of exhibit M, she worked

39.5 hours during the work week ending Sunday, January 1, 2012 and 42 hours during

the work week ending Sunday, January 8, 2012. Accordingly, her extra paycheck for

the semi-monthly pay period ending January 15, 2012, attached as the third page of

exhibit M, included a total of 4.5 hours of extra pay at her regular rate (2 hours for the

week ended January 1, plus 2.5 hours for the week ended January 8) and 2 hours of

extra pay at 1.5 times her regular rate (for the week ended January 8).

35.     Our **Highline Store** opened in June 2011.  Celine Andres Aguirre was a Sales Associate there in 2011 and 2012.  Exhibit O contains pay stubs and calculations for Mr. Aguirre's pay for the semi-monthly pay period ending July 15, 2011.  As shown on the second page of exhibit N, his presumptive weekly salary as of July 2011 was based on a 40-hour week and a regular rate of $25.00 per hour.  As shown on the fourth page of exhibit O, he worked 48 hours during the work week ending Sunday, July 3, 2011.  Accordingly, his extra paycheck for the semi-monthly pay period ending July 15, 2011, attached as the third page of exhibit O, included 8 hours of extra pay at 1.5 times his regular rate for her overtime hours.

36.     Our **Sag Harbor** also opened in June 2011.  At this store, we do not calculate presumptive salary as we do at the other stores.  Instead, we simply total the hours worked during each day the Sales Associate worked in the semi-monthly pay period and instruct Paychex to pay for all of those hours at the Sales Associate's regular rate.  Then we determine the number of hours worked in excess of 40 in weeks that ended during the particular semi-monthly pay period, taking into consideration the hours worked in the last, partial work week in the prior semi-monthly pay period.  For example, Estefania Rivera was a Sales Associate at Sag Harbor in 2011 and 2012.  Exhibit P contains pay stubs and calculations for Ms. Rivera's pay for the semi-monthly pay period ending May 31, 2012.  As shown on the second page of exhibit P, she worked 26 hours in the work week ending Sunday, May 13, 2012, 50 hours in the work week ended Sunday, May 20, and 55.75 hours in the work week ended Sunday, May 28.  Since, as shown on the fifth page of exhibit P, she had worked only 8 hours during the part of the week ending Sunday May 13, 2012 for which she was compensated in the pay period

14

ended May 15, 2013, the 26 hours from that week which were worked during the semi-monthly pay period ending May 31, 2013 were counted as regular, straight-time hours. Therefore, during this semi-monthly pay period, Ms Rivera was paid at her regular rate for (a) the 26 hours she worked during the week ended May 13, (b) the first 40 hours she worked during the week ended May 20, and (c) the first 40 hours she worked during the week ended May 27, for a total of 106 straight-time hours, as reflected in the first page of exhibit P. And since, as shown on the fourth page of exhibit P, she worked 10 hours in excess of 40 during the week ended Sunday, May 20, plus 15.75 hours in excess of 40 during the week ended Sunday, May 27, her extra paycheck for the semi-monthly pay period ending May 31 was for 25.75 hours of overtime, as shown on the third page of exhibit P. As can also be seen on the third page of exhibit P, since her regular rate was $18 per hour, her overtime rate was 1.5 times that amount -- $27 per hour, and this is the rate for which her overtime hours were paid.

37.    Alberto Caballero was a Sales Associate on the payroll of the **Bond Street** store in 2011. Exhibit Q contains pay stubs and calculations for his pay for the semi-monthly pay period ending June 15, 2011. As shown on the second and firth pages of exhibit Q, his presumptive weekly salary as of June 2011 was based on a 40-hour week, and a regular rate of $29.00 per hour. As shown on the fourth page of exhibit Q, he worked 48 hours during the work week ending Sunday, June 5, 2011 and 43 hours during the work week ending Sunday, June 12, 2011. Accordingly, his extra paycheck for the semi-monthly pay period ending June 15, 2011, attached as the third page of exhibit Q, included a total of 11 hours of extra pay at 1.5 times his regular rate (8 overtime hours for the week ended June 5 plus 3 overtime hours for the week ended June 12).

50695.1

## The Allegation That I Told Ms. Robledo Her Paychecks Were for Two Weeks

38.     I have seen an affidavit in which Ms. Robledo says that I told her that "each paycheck was for two weeks of work." That is not true. I never told anyone that the semi-monthly paychecks by which Bond No. 9 pays its employees are for only two weeks.

39.     To summarize, it was the policy of Bond No. 9 at all of the stores at all times during the last three years to pay all Sales Associates for all hours worked, 52 weeks per year, and to pay them at one and a half times their regular rate when they worked more than 40 hours in a single work week. There may have been mistakes now and then, but the mistakes were few, they were not the result of any general practice or policy that affected all Sales Associates similarly, and they do not detract from the fact that it was our policy to pay all overtime hours worked at overtime rates of pay.

40.     This policy was applied to Ms. Robledo as well. Our records show that she worked more than 40 hours only three times in the last three years, and that on two of those occasions she was paid for all of the overtime she was owed. On one of those two occasions (see exhibit H), although she was, in fact, paid the 1.5 hours of overtime she had worked, by mistake she was not paid straight time for 2.5 hours worked in excess of 35 but less than 40. And on a third occasion (see exhibit G), two hours of overtime were paid at her regular rate instead of one and a half times that rate, again by clerical oversight. It is my understanding that after this litigation was started, we offered to pay for these, as well as other hours of overtime Ms. Robledo worked more than

three years ago but was not paid for, but it is my understanding that she declined to accept that offer.

41.     For these reasons, I believe that a class of employees who were not paid overtime should not be certified, because there was no common policy or practice of not paying Sales Associates at the rate of 1.5 times their regular straight time hourly rate of pay when they worked overtime.

Dated:  October 15, 2013

Hormidas J. Caloobanan

Hormidas Caloobanan

17

# EXHIBIT A

## Hormidas Caloobanan

| | |
|---|---|
| **From:** | Hormidas Caloobanan |
| **Sent:** | Friday, October 15, 2010 4:27 PM |
| **To:** | Kline, Cynthia Ann |
| **Subject:** | NEW SALARY: VERONICA ROBLEDO |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

| | | |
|---|---|---|
| Employer Name | : | LAURICE & CO. UPTOWN, INC. |
| Client # | : | AK-06 |

Effective October 18, 2010 **VERONICA ROBLEDO's** annual salary will be $ 47,320 (Based on $26/hr x 35-hrs x 52-weeks = $ 47,320)

1

# EXHIBIT B

Laurice & Co Uptown Inc
9 BOND ST
NEW YORK NY 10012

100 Sales

| 02/15/2011 | 5303 |
|---|---|
| DATE | CHECK NO. |

PAY TO THE
ORDER OF

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

Total Net Direct Deposit(s)
**$1391.97**

AMOUNT

VOID THIS IS NOT A CHECK ............................................. DOLLARS

**NON-NEGOTIABLE**

AUTHORIZED SIGNATURE(S)

TO VERIFY AUTHENTICITY OF THIS DOCUMENT THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN AN

FOLD AND REMOVE                                                                    FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Veronica Robledo
1560 Pelham Parkway So 1P
Bronx, NY 10461

Soc Sec #: xxx-xx-____   Employee ID: 14
Home Department: 100 Sales

Pay Period: 02/01/11 to 02/15/11
Check Date: 02/15/11   Check #: 5303

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 1880 | 1391.97 | 4303.31 |
| NET PAY | 1391.97 | 4303.31 |

| EARNINGS | DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YT |
|---|---|---|---|---|---|---|
| | Regular | | | | | 573. |
| | Commission | | | 1971.67 | | 26 |
| | EARNINGS | | | 1971.67 | | 600 |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YT |
|---|---|---|---|---|
| | Social Security | | 82.81 | 52 |
| | Medicare | | 28.59 | 8 |
| | Fed Income Tax | S 0 | 309.58 | 90 |
| | NY Income Tax | S 0 | 98.61 | 283 |
| | NY Disability | | 1.30 | 3 |
| | NY NYC Inc | S 0 | 58.81 | 170 |
| | TOTAL | | 579.70 | 169 |

| NET PAY | THIS PERIOD ($) | YTD |
|---|---|---|
| | 1391.97 | 4303.3 |

# EXHIBIT C

LAURICE & CO UPTOWN INC
9 BOND ST
NEW YORK NY 10012

0027-AK06
100 Sales

12/30/2010        5293
RATE        CHECK NO.

PAY TO THE
ORDER OF

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

Total Net Direct Deposit(s)
**$1366.34**

AMOUNT

VOID THIS IS NOT A CHECK                                      DOLLARS

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE

TO VERIFY AUTHENTICITY OF THE DOCUMENT THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                                                                  FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Veronica Robledo
1560 Pelham Parkway So 1P
Bronx, NY 10461

Soc Sec #: xxx-xx-____   Employee ID: 14
Home Department: 100 Sales

Pay Period: 12/16/10 to 12/31/10
Check Date: 12/30/10    Check #: 5293

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 849.17 |
| Chkg 1880 | 1366.34 | 38380.47 |
| NET PAY | 1366.34 | 39229.64 |

| EARNINGS | DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YTD |
|---|---|---|---|---|---|---|
| | Regular | | | 1971.67 | | 51923 |
| | Bonus:32 | | | | | |
| | Commission | | | 1971.67 | | 98.07 |
| | EARNINGS | | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD |
|---|---|---|---|---|
| | Social Security | | 122.24 | |
| | Medicare | | 28.59 | |
| | Fed Income Tax | S 0 | 295.78 | |
| | NY Income Tax | S 0 | 98.61 | 2782 |
| | NY Disability | | 1.30 | |
| | NY NYC Inc | S 0 | 58.81 | |
| | TOTAL | | 605.33 | |

| NET PAY | THIS PERIOD ($) |
|---|---|
| | 1366.34 |

Payrolls by Paychex, Inc.

0027  0027-AK06  Laurice & Co Uptown Inc • 9 Bond St • New York NY 10012

EXHIBIT D

LAURICE & CO UPTOWN INC
9 BOND ST
NEW YORK NY 10012

0027 AK06
100 Sales

| DATE | CHECK # |
|------|---------|
| 12/30/2010 | 5294 |

PAY TO THE
ORDER OF

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

Total Net Direct Deposit(s)
**$378.32**

AMOUNT

VOID THIS IS NOT A CHECK ............................................ DOLLARS

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE(S)

TO VERIFY AUTHENTICITY OF THIS DOCUMENT, THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                                                FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Veronica Robledo
1560 Pelham Parkway So 1P
Bronx, NY 10461

Soc Sec #: xxx-xx-    Employee ID: 14
Home Department: 100 Sales

Pay Period: 12/16/10 to 12/31/10
Check Date: 12/30/10     Check #: 5294

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|-------------|-----------------|---------|
| Check Amount | 0.00 | 849.17 |
| Chkg 1880 | 378.32 | 38768.78 |
| NET PAY | 378.32 | 39607.96 |

**EARNINGS**

| DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | |
|-------------|-------|------|-----------------|-----------|---|
| Regular | 5.00 | 26.0000 | 130.00 | 5.00 | 52052. |
| Bonus:32 | | | | | 400.0 |
| Commission | | | | | 4334.2 |
| Overtime | 8.00 | 39.0000 | 312.00 | 8.00 | 315.0 |
| EARNINGS | 13.00 | | 442.00 | 13.00 | 57099. |

**WITHHOLDINGS**

| DESCRIPTION | FILING STATUS | THIS PERIOD ($) | |
|-------------|---------------|-----------------|---|
| Social Security | | 27.40 | 3540. |
| Medicare | | 6.41 | 82. |
| Fed Income Tax | S 0 | 19.37 | |
| NY Income Tax | S 0 | 6.06 | 29. |
| NY Disability | | | 1553.6 |
| NY NYC inc | S 0 | 4.44 | |
| TOTAL | | 63.68 | 7191.1 |

**NET PAY**

| | THIS PERIOD ($) | |
|---|-----------------|---|
| | 378.32 | 39607 |

# EXHIBIT E

**From:** Hormidas Caloobanan
**Sent:** Wednesday, December 29, 2010 1:40 PM
**To:** Kline, Cynthia Ann
**Subject:** PAYROLL FOR PAY PERIOD: DEC 16-31, 2010

PLEASE SEE ATTACHED PAYROLL FOR PAY PERIOD: **DEC 16-31, 2010**
CHECK DATE: **DEC 30, 2010**

SOME IMPORTANT NOTES:

CLIENT # AG-78 – LAURICE EL BADRY RAHME LTD.

Bonus (separate check) = $ 26,000

Bonus (separate check) = $

Bonus (separate check) = $

Bonus (separate check) = $

Bonus (separate check) = $

Bonus (separate check) = $

Bonus (separate check) = $

Overtime (separate check) = 5-hrs reg rate and 11.5hrs time & a half

Overtime (separate check) = 17.5-hrs reg rate

Overtime (separate check) = 5-hrs reg rate and 8.5-hrs time & a half

New Salary effective 12/14/10

Overtime (separate check) = 21-hrs reg rate
Please deduct 1-day from salary

Overtime (separate check) = 10-hrs reg rate and 3.5-hrs time & a half

Please deduct 1-day from salary

Salary = please pay 119-hrs for his salary (from Dec 8-26)
Overtime (separate check) = 14-hrs time & a half

Client # AJ-55 – No. 9 Parfume Leasehold, Inc.

Please deduct 1-day from her salary

Overtime (separate check) = 20-hrs reg rate

Overtime (separate check) = 15-hrs at time & a half

2

Bonus (separate check) = $ 5,000

Please deduct 1-day from her salary for call out on 12/13
Overtime (separate check) = 5-hrs reg rate & 15-hrs time & a half

Please deduct 4-days from salary

### Client # CP-70 – Laurice & Bleecker Corp

Please pay 10-hrs reg rate and 13-hours time & a half

Please pay 29-hrs at reg rate

Commissions = $ 159.60

### Client # AN-61 – Laurice Madison Ltd.

Overtime (separate check) = 14-hrs at time & a half

Overtime (separate check) = 5-hrs reg rate & 10-hrs time & a half

Please deduct 1-day from his salary

### Client # AK-06 – Laurice & Co Uptown, Inc.

Overtime (separate check) = 2.5-hrs reg rate & 8-hrs time & a half

Veronica Robledo          Overtime (separate check) = 5-hrs reg rate & 8-hrs time & a half

Thank you,
Hormidas Caloobanan
Dir Sales Administration
Bond No. 9 New York
Tel # 212-228-0842 Ext 18
Fax # 212-260-8844

3

# EXHIBIT F

LAURICE & CO UPTOWN INC
9 BOND ST
NEW YORK NY 10012

0027-AK06
100 Sales

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| Veronica Robledo | | Regular | | | 1789.67 | | 1789.67 |
| 1560 Pelham Parkway So 1P | | Commission | | | | | 268.44 |
| Bronx, NY 10461 | | EARNINGS | | | 1789.67 | | 2058.11 |

| | WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|---|
| Soc Sec #: xxx-xx-▇▇▇  Employee ID: 14 | | Social Security | | 75.17 | 86.44 |
| Home Department: 100 Sales | | Medicare | | 25.95 | 29.84 |
| | | Fed Income Tax | S 0 | 264.08 | 282.17 |
| Pay Period: 01/01/11 to 01/15/11 | | NY Income Tax | S 0 | 86.14 | 86.14 |
| Check Date: 01/14/11   Check #: 5298 | | NY Disability | | 1.30 | 1.30 |
| NET PAY ALLOCATIONS | | NY NYC Inc | S 0 | 51.71 | 52.85 |

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 1880 | 1285.32 | 1519.37 |
| NET PAY | 1285.32 | 1519.37 |

| | TOTAL | 504.35 | 538.74 |
|---|---|---|---|

| NET PAY | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| | 1285.32 | 1519.37 |

Payrolls by Paychex, Inc.

# VERONICA ROBLEDO- PAY PERIOD (JANUARY 1-15, 2011)

## *PAYROLL DEDUCTIONS*

| CALL OUTS | # OF DAYS | AMOUNT DEDUCTED |
|---|---|---|
| 1/9/11 | 1 | $ 182.00 |
| TOTAL DAYS | 1 | $ 182.00 |

| | | |
|---|---|---|
| GROSS SALARY | $ | 1,971.67 |
| LESS 1 DAY DEDUCTION | $ | (182.00) |
| TOTAL GROSS SALARY | $ | 1,789.67 |

BASED ON:

| | | |
|---|---|---|
| ANNUAL SALARY = 52 WEEKS | $ | 47,320.00 |
| DIVIDE BY 24 PAY PERIOD | | 24 |
| GROSS SALARY PER PAY PERIOD | $ | 1,971.67 |

| | | |
|---|---|---|
| ANNUAL SALARY=52 WEEKS | $ | 47,320.00 |
| DIVIDE BY 52 WEEKS | | 52 |
| WEEKLY RATE | $ | 910.00 |
| DIVIDE BY 5-DAYS PER WEEK | | 5 |
| DAILY RATE | $ | 182.00 |

# EXHIBIT G

LAURICE & CO UPTOWN INC
9 BOND ST
NEW YORK NY 10012

0027-AK06
100 Sales

| 05/13/2011 | 5325 |
|---|---|
| DATE | CHECK NO. |

PAY TO THE
ORDER OF

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

Total Net Direct Deposit(s)
**$162.26**

AMOUNT

VOID THIS IS NOT A CHECK ............................................. DOLLARS

**NON-NEGOTIABLE**

AUTHORIZED SIGNATURE(S)

TO VERIFY AUTHENTICITY OF THIS DOCUMENT, THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                                                                           FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Veronica Robledo
1560 Pelham Parkway So 1P
Bronx, NY 10461

Soc Sec #: xxx-xx-█████   Employee ID: 14
Home Department: 100 Sales

Pay Period: 05/01/11 to 05/15/11
Check Date: 05/13/11   Check #: 5325
**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 1880 | 162.26 | 14277.76 |
| **NET PAY** | **162.26** | **14277.76** |

**EARNINGS**

| DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|
| Regular | 7.00 | 26.0000 | 182.00 | 7.00 | 17563.03 |
| Commission | | | | | 2175.50 |
| **EARNINGS** | 7.00 | | 182.00 | 7.00 | 19738.53 |

**WITHHOLDINGS**

| DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| Social Security | | 7.65 | 829.02 |
| Medicare | | 2.64 | 286.20 |
| Fed Income Tax | S 0 | 9.45 | 2899.78 |
| NY Income Tax | S 0 | | 894.96 |
| NY Disability | | | 11.70 |
| NY NYC Inc | S 0 | | 539.11 |
| **TOTAL** | | 19.74 | 5460.77 |

| | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| **NET PAY** | 162.26 | 14277.76 |

# VERONICA ROBLEDO - PAY PERIOD (MAY 1-15,2011)

|  |  | EXTRA HOURS |
|---|---|---|
|  |  | @ REGULAR RATE |
| 5/2/11 | 8 |  |
| 5/3/11 | 8 |  |
| 5/4/11 | 7 |  |
| 5/5/11 | OFF |  |
| 5/6/11 | 8 |  |
| 5/7/11 | 8 |  |
| 5/8/11 | 5.5 |  |
| TOTAL HOURS | 44.5 |  |
| LESS REG. HOURS | -37.5 |  |
| TOTAL EXTRA HOURS | 7 | 7 |

| TOTAL EXTRA HOURS | 7 |
|---|---|

# EXHIBIT H

LAURICE & CO UPTOWN INC
9 BOND ST
NEW YORK NY 10012

0027-AK06
100 Sales

06/15/2011          5333
DATE                  CHECK NO.

PAY TO THE
ORDER OF

VERONICA ROBLEDO
1560 PELHAM PARKWAY SO 1P
BRONX NY 10461

Total Net Direct Deposit(s)
**$112.92**
AMOUNT

VOID THIS IS NOT A CHECK ........................................... DOLLARS

**NON-NEGOTIABLE**
AUTHORIZED SIGNATURE(S)

TO VERIFY AUTHENTICITY OF THIS DOCUMENT THE BACK CONTAINS HEAT SENSITIVE INK THAT CHANGES FROM BLUE TO CLEAR AND ALSO CONTAINS AN ARTIFICIAL WATERMARK WHICH CAN BE VIEWED WHEN HELD AT AN ANGLE

FOLD AND REMOVE                                                    FOLD AND REMOVE

**PERSONAL AND CHECK INFORMATION**
Veronica Robledo
1560 Pelham Parkway So 1P
Bronx, NY 10461

Soc Sec #: xxx-xx-____   Employee ID: 14
Home Department: 100 Sales

**Pay Period:** 06/01/11 to 06/15/11
**Check Date:** 06/15/11   **Check #:** 5333

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 1880 | 112.92 | 16017.27 |
| **NET PAY** | **112.92** | **16017.27** |

**EARNINGS**

| DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|
| Regular | 2.50 | 26.0000 | 65.00 | 9.50 | 19599.70 |
| Commission | | | | | 2444.64 |
| Overtime | 1.50 | 39.0000 | 58.50 | 1.50 | 58.50 |
| **EARNINGS** | **4.00** | | **123.50** | **11.00** | **22102.84** |

**WITHHOLDINGS**

| DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| Social Security | | 5.19 | 928.32 |
| Medicare | | 1.79 | 320.48 |
| Fed Income Tax | S 0 | 3.60 | 3231.12 |
| NY Income Tax | S 0 | | 993.57 |
| NY Disability | | | 13.00 |
| NY NYC Inc | S 0 | | 599.08 |
| **TOTAL** | | **10.58** | **6085.57** |

| NET PAY | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| | 112.92 | 16017.27 |

## VERONICA ROBLEDO - PAY PERIOD (JUNE 1-15,2011)

|  |  | EXTRA HOURS @ REGULAR RATE | OVERTIME @ TIME 1/2 |
|---|---|---|---|
| 6/6/11 | 9.5 |  |  |
| 6/7/11 | 8 |  |  |
| 6/8/11 | off |  |  |
| 6/9/11 | 8 |  |  |
| 6/10/11 | 8 |  |  |
| 6/11/11 | 8 |  |  |
| 12-Jun | off |  |  |
| TOTAL HOURS | 41.5 |  |  |
| LESS REG. HOURS | -37.5 |  |  |
| TOTAL EXTRA HOURS | 4 | 2.5 | 1.5 |

| | |
|---|---|
| TOTAL EXTRA HOURS | 2.5 |
| TOTAL OVERTIME HOURS | 1.5 |

# EXHIBIT I

NO 9 PARFUME LEASEHOLD INC
9 BOND STREET
NEW YORK NY 10012

0027-AJ55
100 Payroll

Payrolls by Paychex, Inc.

Payrolls by Paychex, Inc.

STEPHANIE J EHLERT



## PERSONAL AND CHECK INFORMATION
Stephanie J Ehlert

Soc Sec #: xxx-x   Employee ID: 69
Home Department: 100 Payroll

Pay Period: 05/16/11 to 05/31/11
Check Date: 05/31/11   Check #: 2668

### NET PAY ALLOCATIONS

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 1662.29 |
| Chkg 8695 | 744.39 | 2735.61 |
| NET PAY | 744.39 | 4397.90 |

### EARNINGS

| DESCRIPTION | HOURS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|
| Regular | | | 888.33 | 100.00 | 4418.99 |
| Commission | | | | | 698.97 |
| EARNINGS | | | 888.33 | 100.00 | 5117.96 |

### WITHHOLDINGS

| DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| Social Security | | 37.31 | 214.95 |
| Medicare | | 12.88 | 74.21 |
| Fed Income Tax | S 2 | 56.17 | 252.06 |
| NY Income Tax | S 2 | 21.90 | 103.40 |
| NY Disability | | 1.30 | 6.50 |
| NY NYC Inc | S 2 | 14.38 | 68.94 |
| TOTAL | | 143.94 | 720.06 |

| NET PAY | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| | 744.39 | 4397.90 |

Payrolls by Paychex, Inc.

**0027 0027-AJ55** No 9 Parfume Leasehold Inc • 9 Bond Street • New York NY 10012 • (212) 228-1956

**STEPHANIE EHLERT (MAY 16-31,2011)**

GROSS SALARY            $                                          888.33

BASED ON:
ANNUAL SALARY           $                                       21,320.00
                        BASED ON $20.00 PER HR X 20.5-HRS PER WEEK
                        $410 PER WEEK X 52-WEEKS
                        =$21,320.00

                        $21,320.00 / 24 pay pds
                        =$888.33