UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

VERONICA ROBLEDO, individually and on behalf of all others similarly situated,

                      Plaintiffs,

            - against -

NO. 9 PARFUME LEASEHOLD and LAURICE RAHME, individually,

                      Defendants.

-----------------------------------------------------------------X

**DECLARATION OF ALBERTO CABALLERO**

No. 12 Civ. 3579 (ALC)(DF)

STATE OF NEW YORK    )
                           : ss.:
COUNTY OF NEW YORK  )

ALBERTO CABALLERO hereby declares under penalty of perjury as follows:

1. I was employed by Laurice Washington Ltd. as the Manager of a retail store located on Washington Street in New York, New York (the "Highline" store) that sells fragrances under the brand name Bond No. 9, from June 2011, when the Highline store opened, until January 2012. I make this affidavit in opposition to plaintiffs' motion for conditional certification of a collective action on my own personal knowledge, except as to matters stated to be on information and belief and as to such matters I believe it to be true.

2. I worked full-time as Manager of the Highline store. Generally, there were three or four employees in the Highline store at any given time – a Manager and two or three Sales Associate. On rare occasions there may have been as many as four Sales Associates in addition to the Manager or as few as one.

63853

3.  The Highline store was open only 9 hours per day, Monday through Saturday, and either 6 or 8 hours on Sunday. Sometimes there were pre-scheduled special events that finished later than the store's regularly scheduled closnig time. Everyone who worked at the Highline store took an hour's lunch break, so they usually worked only 8 hours per day and they did not work more than 40 hours in a week unless they worked a sixth day. It was only on the rare occasion when a Sales Associate at the Highline store worked six days in a week, and it is my understanding that when that happened, he or she was paid at one and a half time his or her regular hourly rate of pay for the hours worked in excess of 40 in the week.

**Lunch Breaks**

4.  Sales Associates at the Highline store, as well as the Manager, are entitled, and required, to take a lunch break of a full hour each day.

5.  I was never required to work through a lunch break while I worked at the Highline store, nor were any of the Sales Associates.

6.  I never knew a Sales Associate at the Highline store not to take an entire hour for a lunch break.

7.  I was aware that Sales Associates are not paid for lunch breaks.

8.  I never heard a Sales Associate in the Highline store, nor at the Bond Street store or any of the other stores affiliated with them, say that he or she had worked through a lunch break.

50695.1

9.     I never authorized a Sales Associate to work through lunch break, and I do not know of any instance when a Sale Associate at the Highline store sought or was given authority by anyone else to work through a lunch break.

**Off-the-Clock Work Before or After the Store Opens and Closes**

10.    As stated above, the Highline store was open 9 hours per day Monday through Saturday, and either 6 or 8 hours on Sundays.  Ordinarily, everyone who worked there was scheduled for an 8-hour shift.  We were expected to start work when the store opened and stop work when it closed.  We were required to call in to the Bond No. 9 headquarters to report the time we started work in the morning, as well as the time when we stopped work at the end of the day.  I was aware that for all Sales Associates, an hour was deducted from the total amount of time between call-in and call-out for  lunch breaks.  I believe that all of the Sales Associates were aware of this.

11.    Sometimes a Sales Associate or the Manager arrived at the Highline store a few minutes early in the morning, before the store was scheduled to open, and generally the person who opened the store (usually the Manager) arrived a few minutes before the store's scheduled opening time (usually less than 5 or 10 minutes)  to unlock the door, deactivate the alarm system, and open the inside gate.  However, no one was required to do, or did, any work in the store until it opened because there was nothing that had to be done at that time of day other than to turn the lights on, and turn the cash register and credit card machine on.  Everything that needed to be done to get the store ready at the beginning of the day was done the day before, prior to closing.  So when someone arrived early, he or she usually spent the time until the store opened drinking coffee, socializing,  or attending to personal grooming or similar matters.

12. There were a number of store maintenance chores that had to be done on a daily basis, such as restocking inventory, taking care of inventory, clienteling duties, and making sure the store is clean. These chores were scheduled to be done, and were done, during regular store hours when customer traffic was slow. They were not done before the store opened, and they could not be done after the store closed, because of the alarm system. This was true at the Highline at all times I worked there, and I believe it is still true now.

13. At the end of the day, when the store closes and just before the door is locked, the person who locks the door turns the alarm system on. The system becomes active 60 seconds later, and the doors cannot be opened again without triggering the alarm. If the system is not turned on within a certain period of time after the store is scheduled to close (I am not sure how long that period is), the alarm company calls the store to make sure everything is all right. This was true at the Highline store at all times I worked there.

14. For this reason, I believe it is fair to say that no one worked at the Highline store after the store was scheduled to close, and certainly not after the door was locked.

15. I am sure that no Sales Associate at the Highline store ever worked through a lunch break, before the store opened, or after the store closed without being paid for all the time she or he worked.

Dated: October 16, 2013

*Alberto Caballero* (signature)
_____
Alberto Caballero

50695.1