UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

VERONICA ROBLEDO, individually and on
behalf of all others similarly situated,

        Plaintiffs,

- against -

NO. 9 PARFUME LEASEHOLD and
LAURICE RAHME, individually,

        Defendants.

----------------------------------------------------------------X

DECLARATION OF
HORMIDAS CALOOBANAN

No. 12 Civ. 3579 (RLC)(DF)

STATE OF NEW YORK   )
                                  : ss.:
COUNTY OF NEW YORK  )

    I, HORMIDAS CALOOBANAN, declare under penalty of perjury that the following is true and correct:

    1.    I am the Director of Sales Administration for Laurice el Badry Rahme Ltd. d/b/a Laurice & Co. and related companies, including No. 9 Parfume Leasehold (herein "Parfume"), which is located in the basement of the building located at 9 Bond Street, New York, the building where Parfume's flagship retail store is located on the first floor. I have been so employed by Laurice el Badry Rahme Ltd. d/b/a Laurice & Co. for over 15 years. I make this declaration in opposition to plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why Preliminary and/or Permanent Injunction Should Not Issue disqualifying Dennis A. Lalli, Esq. and the law firm of Bond, Schoeneck & King, PLLC (herein "BSK") from representing Laurice Rahme and Parfume in this action and enjoining them from destroying evidence and suborning perjury in this case (herein the

53920

"Application") on my own personal knowledge, except as to matters stated to be on information and belief and as to such matters I believe them to be true.

2. I am aware that Mr. Lalli represented Parfume in regard to the hearings held on the unemployment insurance claim of Joan Bolick on October 31, 2011 and January 31, 2012. Mr. Lalli met with me a few days before the first day of the hearing, and also with Laurice Rahme, Karin Widmann, Christine Piccola, and Lena Lisanti. We discussed the circumstances that surrounded the end of Ms. Bolick's employment. Mr. Lalli did not tell me or any of the others what he wanted us to say. I told him I was not at 9 Bond Street when Joan Bolick allegedly quit and I did not, as she later claimed, take her Blackberry from her. She left the Blackberry on her desk at 42 Bond Street and so informed me when she left the premises.

3. Mr. Lalli came to the office at 9 Bond Street on October 31, 2011 before going to the hearing. He told me then that my testimony was not needed for the hearing and, therefore, that I would not be attending. I was later told that at the hearing, an issue had arisen as to whether Ms. Bolick left the Blackberry on her desk or I took it from her.

4. Mr. Lalli came to the office on the morning of January 31, 2012 before another hearing on Ms. Bolick's claim was to take place that afternoon. At that time, he prepared me to testify concerning the information I had previously given to him concerning her leaving the Blackberry on her desk. On January 31, 2012, Mr. Lalli also spoke to Ms. Rahme, Ms. Widmann, and Ms. Piccola to prepare them to testify.

5. With respect to the January 31, 2012 hearing, Mr. Lalli told me to tell the truth, which I did when I testified later that day. He also told the others to tell the truth.

He never told me or any of the others that he wanted me or them to say anything that was not true.

6. The only documents Mr. Lalli showed me on January 31, 2012, were documents I had previously provided him from the company's files. He did not show me any list of questions or answers or any documents he had written, and no one referred to any documents that anyone reviewed that morning or in the car on the way to the hearing as "cheat sheets."

7. I was in the car in which Mr. Lalli, Ms. Rahme, Ms. Widmann, and Ms. Piccola rode to the hearing on January 31, 2012. The car is similar to a London cab, with a bench seat in the back that holds three people and two jump seats that are next to each other and face the bench seat. Mr. Lalli and I sat in the jump seats next to each other with a small table between us, and all of us were within close proximity in the car. I could hear the conversations in the car. I did not hear Mr. Lalli tell Ms. Widmann that there was anything in particular that he wanted her to say when she testified, and Ms. Widmann did not tell Mr. Lalli that she was uncomfortable about any of the testimony she was going to give.

8. I have reviewed the allegations set forth in Karin Widmann's affidavit. Many of those allegations are untrue. For example:

    a. In Paragraph 15, Ms. Widmann claims she "personally witnessed Lalli work closely" with me to "review and rehearse proposed witness statements and testimony." In my five or so years of working with Mr. Lalli, he has prepared me to testify on only two occasions. One occasion was an unemployment hearing in Manhattan concerning a former employee named Capozzi. Ms. Widmann's employment with Parfume had ended before he prepared me to testify in this matter, and Ms. Widmann was not and could not have been present at that time. During that preparation, he never told me what to say and never told me to lie. The only other time he prepared me to testify was on January 31,

53920

2012, about whether Bolick left her Blackberry voluntarily or if I took it from her. On that day, I recall Mr. Lalli and I met alone. I did not see Ms. Widmann observing us. If she did, I do not believe she could have been close enough to hear our conversation or I would have seen her. Again, Mr. Lalli did not tell me what to say or to lie during that preparation session. He told me to tell the truth. Mr. Lalli and I did not discuss my testimony in the car ride to the hearing that day.

b.   With respect to Paragraph 32, where Ms. Widmann claims she "personally witnessed . . . Lalli aggressively coach . . . [me] between five (5) and ten (10) different times" she is not being truthful. Mr. Lalli never aggressively coached me and I attended only two preparation sessions with him and she was not present at either one.

c.   With respect to Paragraphs 23 and 24, I was not at 9 Bond Street at the time of the incident, and therefore was not at my office downstairs. I was at 42 Bond Street, a block away, when Ms. Piccola told me that I was wanted at 9 Bond Street because something had happened between Joan Bolick and Ms. Rahme. Therefore, I was not downstairs and did not come upstairs as Ms. Widmann claims.

d.   The claim in Paragraph 28 that whenever Mr. Lalli "attempted to coach" me and "encourage [me] to lie," I grasped an old photo of my daughter and prayed aloud is simply untrue and absurdly so. Mr. Lalli never attempted to get me to lie on behalf of anyone. In addition, I never grasped an old photograph of my daughter while or after Mr. Lalli and I discussed my testimony. I do, in fact, have photos of my daughter and others on my Smartphone, but I never said any prayers, aloud or silently, or asked God for forgiveness because I was lying under oath for my employer. I was never asked to lie and never did lie. The testimony I gave at the Bolick hearing was the truth.

e.   With respect to Paragraph 29, there were no occasions when I "[shook] with fear" because I was being asked to lie. I was somewhat nervous about testifying on January 31, 2012, not because I was lying but rather because I had never testified before and did not know what to expect. For that reason, I appreciated Mr. Lalli explaining the process and the questions I was to be asked.

f.   With respect to Paragraph 30, Ms. Widmann's claim that she witnessed Mr. Lalli "on numerous occasions" provide me with "cheat sheets" is totally false. Mr. Lalli has never given me any outlines or documents which concerned my testimony or the questions he intended to ask me. On January 31, 2012, the only paper or document I took to the hearing was the Notice of Hearing which, as Office Manager, came to me in the mail.

g.   With respect to Paragraph 31, the claim that when the supposed "attorney-prepared cheat sheets" were given to me they would "shake in [my] hands is totally false. My hands have never held any such sheets.

  h. With respect to Paragraphs 32 and 33, the car ride described did occur, but Mr. Lalli never "aggressively coach[ed]" me or told me or anyone else in the car to lie.

  i. With respect to Paragraphs 34-41, I was in the car, sitting close to Mr. Lalli and the others, and I did not hear the exchange in which Ms. Widmann claims she, Mr. Lalli and Ms. Rahme engaged.

  j. With respect to Paragraph 42, I never saw any "cheat sheets" and never saw anyone studying them in the car or outside the hearing room. I was never shaking because I was "so afraid about having to lie." I did not lie, and was never asked to lie. My testimony on January 31, 2012 was truthful. And because potential witnesses were sequestered, Ms. Widmann was not in the room and could not have heard my testimony.

There are other paragraphs with which I disagree. The foregoing subparagraphs are examples.

  9. I have worked with Mr. Lalli for over five years, and have found him to be intelligent, ethical, and professional. He did congratulate me in front of others for being a good witness after the hearing on January 31, 2012. However, the suggestion that he congratulated me in an open hallway or elevator for lying under oath is insulting to both him and me, as well as ridiculous. That is not what happened and would not have been consistent with the manner in which Mr. Lalli has represented Parfume during the last five years.

*/s/ Hormidas T. Caloobanan*
Hormidas Caloobanan

Dated: New York, New York
    October 17, 2012

53920